IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., and | § | |
| AADVANTAGE LOYALTY IP LTD., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 4:22-cv-44 |
| | § | |
| RED VENTURES LLC, and | § | |
| THE POINTS GUY LLC, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS AMERICAN AIRLINES, INC. AND
## AADVANTAGE LOYALTY IP LTD.'S ORIGINAL COMPLAINT

Plaintiffs American Airlines, Inc. and AAdvantage Loyalty IP Ltd. (together, "American"), through their attorneys, brings this action against defendants Red Ventures LLC and The Points Guy LLC (together, "defendants") and respectfully allege as follows:

### NATURE OF THE CASE

1.      This lawsuit relates to the use of trademarks and expropriation of a world-famous brand and goodwill to unfairly compete in the highly competitive context of airline rewards programs. The fundamental purpose of intellectual property law—both federal and Texas—is to protect competitors from exactly this type of expropriation and to ensure that substantial investments in developing a mark, a brand, a business, and a proprietary website and dataset cannot simply be replicated for free through theft, unfair competition, and misrepresentation. Plaintiffs bring this lawsuit to vindicate those purposes, to recover for the damage defendants' unlawful conduct has caused, and to prevent any such further conduct from occurring in the future.

2.     Four decades ago, American launched a revolutionary rewards program called AAdvantage®. In the ensuing years, American invested substantial sums and time to build the AAdvantage® brand and to create trust with its millions of customers and members. That work culminated in the development of AA.com—a first-in-class online airline rewards portal. On that website, AAdvantage® members sign up, agree to American's terms and conditions, and—in exchange for use of the platform and its services—provide information to American that American in turn uses to enhance each member's experiences and its services. Under the terms and conditions, all content and data on the platform is American's "exclusive" property. Over time, American developed through skill and substantial investment specific categories of information that it helps to have for each customer—information that assists in booking flights, changing flights, providing AAdvantage® rewards, creating airline "status" for members, and many other services. This dataset is proprietary, confidential, and—as defendants well know—highly valuable.

3.     In the past six months, defendants have deployed an unlawful scheme to expropriate for free American's brand, goodwill, and intellectual property to gain access to all the proprietary information and data contained on the AA.com portal. Defendants are affiliated with The Points Guy—a blog that debuted in June 2010 to "maximize [readers'] travel experience." The Points Guy blog originally provided advice to travelers on how to maximize credit card and rewards points as well as reviews of various travel products. But over time, The Points Guy has expanded into "a lifestyle media brand," becoming a powerhouse name in and of itself. In September 2021, The Points Guy expanded further into a new mobile application—the "TPG App." The TPG App pledged in a press release that the app, similar to AA.com, would "help users learn about points,

miles, and loyalty programs, while maximizing their **earning** potential, and discovering how to efficiently **burn** those earned points and miles to see the world."

4.    Unlike The Points Guys' prior offerings, this new app provides much more than reviews, advice, and analysis. It encourages AAdvantage® members (among others) to give TPG App their AAdvantage® user information and passwords so that TPG App can invade American's servers, access users' accounts, and collect and expropriate the proprietary data that AAdvantage® has developed, maintained, stored, and protected over many years. TPG App has done this in plain violation of American's terms and conditions, which prohibit use of an AAdvantage® member's password and identification number by non-members (or family members and co-workers/employees). And TPG App deployed its platform knowing full well that it was encouraging mass breaches of American's terms and conditions by members, all of whom agree not to share their passwords and identification numbers with third parties. TPG App—which agrees to American's terms and conditions each time it accesses AA.com—is therefore not only in plain violation of those terms but also is actively and intentionally encouraging consumer breaches, rendering defendants liable for tortious interference of contract.

5.    But TPG's unfair competition is worse than simply breaching contracts and tortiously interfering. TPG App also is knowingly and willfully expropriating American's protected intellectual property to deceive consumers. TPG App's platform displays American's trademarks and copyrights in numerous ways. In fact, in The Points Guy's blog article that posted on the day TPG App went live, American's marks were front and center in the blog's advertisement-style piece encouraging readers to download TPG App. Below is a true and accurate image taken from an article posted on The Points Guy's blog:



The consequence: AAdvantage® members are led to believe that American is working with TPG App and that American has authorized data-sharing and collection.

6.      By deploying American's intellectual property for its own gain to access the proprietary data and information that, under American's terms and conditions it owns and controls, TPG is essentially free-riding on decades of investment by American, using American's own intellectual property, brand, and goodwill to supplant American's customer relationships. And in the long run, American's customers will suffer harm. Although TPG App is working to directly compete with AAdvantage® for customer relationships and data, TPG App cannot provide the direct services AAdvantage® does with respect to booking flights, changing flights, deploying rewards, and upgrading status. Even as TPG App is portraying itself as a partner of American by using its intellectual property to convince customers to let it expropriate American's proprietary and confidential information, TPG App is harming consumers by creating a middle-man.

7.      TPG App knows exactly what it is doing and why its conduct is unfair and unlawful. In fact, before TPG App launched, defendants actually approached Plaintiffs to partner on TPG

App—including with respect to use of American's trademarks. American declined—as is its right. But TPG App proceeded anyway. It held itself out as the very type of partner it had asked American to be, and it used American's intellectual property in exactly the ways American had declined to allow. Defendants' expropriation of American's intellectual property was therefore knowing, willful, and intentional. Defendants expressly sought and seek to deploy American's brand to build relationships with its customers and to collect the very consumer dataset American has invested so much time and effort to build.

8.     American reached out to defendants in good faith to try to address this conduct and explained in detail why defendants' conduct is unlawful. Defendants responded by asking American to identify the specific terms and conditions that prohibit defendants' conduct. But that request was nothing but a ruse. At the time defendants sent that question, defendants had already filed a declaratory judgment action in Delaware, seeking a declaration that their conduct is lawful—without informing the Delaware court that American's terms and conditions not only prohibit Defendants' unlawful access and data mining, but also affirmatively require that all litigation arising from their access to be litigated in this forum. Defendants engineered their Delaware filing to multiply proceedings and to  increase costs to American, all in an effort to continue confusing consumers into believing that that they are an authorized part of the AAdvantage® ecosystem.

9.     American therefore has no choice but to seek relief from this Court to protect its proprietary data as well as its goodwill, reputation, and business and to ensure that its AA.com website and AAdvantage® program remain a secure and valuable environment for American's customers.

**PARTIES**

10.     Plaintiff American Airlines, Inc., is a Delaware corporation with its worldwide headquarters in this District at 1 Skyview Drive, Fort Worth, Texas 76155.

11.     Plaintiff AAdvantage Loyalty IP Ltd. is an exempted company incorporated with limited liability under the laws of the Cayman Islands.

12.     Defendant Red Ventures LLC ("Red Ventures") is a North Carolina limited liability company with its principal place of business at 1101 Red Ventures Drive, Fort Mill, South Carolina 29707. It may be served with process by the Texas Secretary of State pursuant to Tex. Civ. Prac. & Rem. Code §17.044.

13.     Defendant The Points Guy LLC ("TPG") is a Delaware limited liability company with its principal place of business at 1423 Red Ventures Drive, Fort Mill, South Carolina 29707. Red Ventures is TPG's parent company. It may be served with process by the Texas Secretary of State pursuant to Tex. Civ. Prac. & Rem. Code §17.044.

**JURISDICTION AND VENUE**

14.     This Court has jurisdiction over this action pursuant to 15 U.S.C. §1121(a) and 28 U.S.C. §1331 and §1338. American asserts claims arising under 18 U.S.C. §1030, 15 U.S.C. §§1114, 1116, 1117, and 1125, and for copyright infringement under 17 U.S.C. §101. The Court has supplemental and pendent jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367.

15.     The Court has personal jurisdiction over defendants. They committed torts in this State, breached a contract entered into and governed by the laws of this State, and violated Texas statutory law. They systematically did and still do business here. The harm that their conduct inflicts is felt here, where American is based, and defendants know that this harm will occur here.

Defendants have intentionally availed themselves of the Texas market and rendered the exercise of jurisdiction over them by this Court consistent with traditional notions of fair play and substantial justice.

16.     The Court has jurisdiction over these claims pursuant to the agreement for access or use of American's website. It provides, "Any lawsuit brought by you related to your access to, dealings with, or use of the Site must be brought in the state or federal courts of Tarrant County, Texas." This forum-selection clause applies to "[a]ny lawsuit" "related to [defendants'] access to, dealings with, or use of the Site." The claims asserted here arise out of defendants' "access to, dealings with, [and] use of" American's website.

17.     Venue is proper in this District under 28 U.S.C. §1391(b)(2). A "substantial part of the events . . . giving rise to the claim occurred" here. Defendants knowingly and without authorization did and do access American customer data held in American servers located here.

FACTUAL ALLEGATIONS

**A.     Background**

18.     Because of its commitment to customer service, Fort Worth-based American has grown to be the largest commercial airline in the world, with the greatest number of passengers carried, the most revenue passenger miles flown, and the largest fleet of planes. During its more than 90-year history, American has built global name recognition and goodwill, establishing itself as a company with reliable, quality customer service and valued customer relationships.

19.     Consistent with its role as a long-time innovator in the industry, American was one of the first companies to launch a loyalty program, rewarding frequent travelers with special privileges, such as free upgrades, discounted tickets, and frequent-flyer miles. American launched its loyalty program, named AAdvantage®, forty years ago. It quickly became a model for loyalty

programs in the industry and has been for decades. American has developed its distinctive AAdvantage® brand and program through significant work and investment.

20.     The AAdvantage® program evolved over the years into a broad loyalty program with myriad of ways to "earn" and "burn" AAdvantage® miles, from co-branded credit cards to hotel stays to purchases of retail products. Member-related benefits include priority boarding, expedited security, discounted Admirals Club memberships, free checked baggage, seat choice, complimentary standby and flight changes, among other benefits depending on member status.

21.     AAdvantage® is an important part of American's business and crucial to building and maintaining relationships with its valued customers.

22.     American owns and operates a software application—the "American Airlines App"—which, among other features, allows AAdvantage® members to log into their accounts, view their AAdvantage® information, track their AAdvantage® reward miles, track their progress toward elite status qualifications (AAdvantage Gold®, AAdvantage Platinum®, AAdvantage Platinum Pro®, AAdvantage Executive Platinum®), review AAdvantage® promotions (e.g., special offers for bonus AAdvantage® points for certain hotel stays), and review American AAdvantage® co-branded credit cards.

23.     The icon for the American Airlines App is the "Flight Symbol."

**B.     American's Confidential and Proprietary Data**

24.     American owns and operates its website AA.com. American customers can sign up for AAdvantage® through AA.com, and members use AA.com to access their AAdvantage® accounts. American has invested substantial time and millions of dollars in developing, marketing, and maintaining AA.com and its AAdvantage® program.

25.     It is critical to American and its business that AA.com and its AAdvantage® program remain secure resources that customers can trust with their private travel information.

26.     AA.com is a proprietary website consisting of a privately owned computer system, with supporting servers, databases, routers, networks, bandwidth, computer capacity, firewalls, and other equipment. The AA.com servers are located in Texas. Through AA.com, American provides time-sensitive proprietary fares to actual and potential customers in an interactive format. Customers can shop for and book travel on AA.com and perform a number of other activities, including management of AAdvantage® accounts and check-in for flights.

27.     American has invested substantial time and millions of dollars in developing, marketing, and maintaining its proprietary computer system and website, the proprietary fares contained in it, its AAdvantage® functionality, and the other sophisticated functions that it performs, all for the purpose of serving its customers.

28.     To protect the security of its website and ensure normal operations, American makes its website and the proprietary contents available for consumer access and use subject to the AA.com Use Agreement ("Use Agreement"). An interactive link on the homepage and each page of AA.com—including AAdvantage® pages—references "Legal, privacy, copyright" information and links to the Use Agreement governing AA.com site usage. The Use Agreement provides the terms and conditions by which users may access and use AA.com.

29.     To create an AAdvantage® account, a user must agree to the AAdvantage® terms and conditions and acknowledge this by clicking a check box. The AAdvantage® terms and conditions incorporate the Use Agreement, stating that, "By accessing your AAdvantage® account on aa.com, you agree to the aa.com site usage policy."

30.     When an AAdvantage® member submits their credentials to sign into their account through AA.com, they acknowledge that "[b]y logging in, you accept the AAdvantage terms and conditions" (linking to the AAdvantage® terms and conditions).

31.     The Use Agreement provides, "In return for gaining access to the Site and using it, you agree to be bound by the following Agreement without limitation or qualification, so please carefully review this Agreement before proceeding. If you do not intend to be legally bound by these terms and conditions, do not access and use the Site."

32.     Because access or use of AA.com constitutes acceptance of the Use Agreement, the Use Agreement constitutes a valid and enforceable contract between American and those who access and use the website.

33.     The Use Agreement for access and use of AA.com specifically provides:

- Unless otherwise noted, all information, AAdvantage® account information, articles, data, images, passwords, Personal Identification Numbers ("PINs"), screens, text, user names, Web pages, or other materials (collectively "Content") appearing on the Site are the exclusive property of American Airlines Group, Inc., or American Airlines, Inc., or their subsidiaries and affiliates.

- You may not copy, display, distribute, download, license, modify, publish, re-post, reproduce, reuse, sell, transmit, use to create a derivative work, or otherwise use the content of the Site for public or commercial purposes. Nothing on the Site shall be construed to confer any grant or license of any intellectual property rights, whether by estoppel, by implication, or otherwise.

- American Airlines provides the Site solely to permit you to determine the availability of goods and services offered on the Site and to make legitimate reservations or otherwise transact business with American Airlines, and for no other purposes. The Site is for your personal, non-commercial use.

- You agree that you will not misuse the Site. "Misuse" includes, but is not limited to, using the Site to do any of the following: . . .

  - Monitor or copy any Content by using any manual process, or any robot, spider, or other automatic device, without first obtaining American Airlines' prior written consent.

  - Act as a mileage management service, mileage tracking service or mileage aggregation service for any AAdvantage member.

  - Utilize an AAdvantage member's password or personal identification number during log-in, unless you are: the AAdvantage member to whom that password or personal

> identification number is assigned (the "Authorized AAdvantage member"); a family member of the Authorized AAdvantage Member, acting with the Authorized AAdvantage Member's permission; or an employee of the Authorized AAdvantage Member's employer, acting with the Authorized AAdvantage Member's permission.

34.     Likewise, American restricts AAdvantage® members from divulging their log-in credentials to individuals or entities outside of their household. The Use Agreement provides:

- Your account information is owned by and proprietary to American Airlines. . . . You may not give access to your account to any third party on-line service, including, but not limited to any mileage management service, mileage tracking service, or mileage aggregation service.

- You must access your account information directly through the Site and not through a third party Website, including but not limited to any mileage management service, mileage tracking service, or mileage aggregation service. You also violate this Agreement if you enable an AAdvantage member to access account information without visiting the Site.

### C.      American's Distribution of its Proprietary Information

35.     American authorizes only certain channels to access its proprietary information, including AAdvantage® account information. In so doing, it ensures that potential collaborators meet its business standards for use of its proprietary information.

36.     The use of American property is predicated on these companies' adherence to rules, practices, and contracts that American has promulgated or negotiated with them.

### D.      American's Valuable Rights

37.     Over the years, American has developed global name recognition and goodwill and become a household name. A significant part of its success has been its investment in its brand and intellectual property. For decades, it has used and still uses the trade name "American Airlines" and numerous trademarks and service marks such as AA, AMERICAN AIRLINES, and the "Flight Symbol" marks relating to AA.com and its AAdvantage® loyalty program, alone and with other

words and designs. American's brands, trade names, and other intellectual property are the result of significant investment and worth billions of dollars.

38.     To protect its investment in its marks, American registers its trademarks with the United States Patent and Trademark Office ("USPTO") on the Principal Register, and registers its unique artwork, like the "Flight Symbol," with the U.S. Copyright Office. American also registers its trademarks in many other countries throughout the world.

39.     American's registered marks include the following:

| Mark/Name | Reg. No. | Registration Date | Services |
|---|---|---|---|
| **AMERICAN AIRLINES** | 4939082 | April 19, 2016 | (Int'l Class: 35)<br>Sales promotion; promoting the goods and services of others by means of a loyalty program, discount program, and an incentive awards program whereby purchase points are earned or awarded for purchases made from vendor subscribers or travel conducted by member subscribers which can then be redeemed for merchandise and travel; online retail store services featuring gift cards and private club membership; promoting the goods and services of others by means of providing an on-line shopping mall with links to the retail web sites of others in the field of books, computers, software, office supplies, consumer electronics, music, sporting and recreational equipment, gifts, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise.<br><br>(Int'l Class: 37)<br>Repair and maintenance of aircraft, vehicles, aircraft-related facilities, baggage-related facilities, and air travel-related facilities; refueling of aircraft and land vehicles; ground support services in the field of air transportation, namely, aircraft de-icing services, aircraft interior and exterior cleaning, and sanitation.<br><br>(Int'l Class: 39)<br>air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and for groups, providing air transportation reservation services for others, providing vehicle reservation services for others, providing cruise reservation services for others, and |

providing vacation reservation services by means of a global computer network, namely, coordinating travel arrangements for individuals and for groups; providing information in the field of travel by means of a global computer network; providing lounge facilities, namely, airport services featuring transit lounge facilitiesfor passenger relaxation and also including shower facilities

(Int'l Class: 41)
Providing online electronic publications, namely, online magazines and online newsletters in the field of general interest; publication of magazines; providing in-flight entertainment services, namely, providing passengers with entertainment services in the form of providing in-flight entertainment services, namely, providing movies, radio and radio programs, music, documentaries, music videos, news and information in the field of sports, live and recorded television programs, e-books, tablets, video and online games, and children's programming, all by means of an inflight entertainment system; providing in-flight entertainment services, namely, providing passengers with entertainment services in the form of providing in-flight entertainment services, namely, providing movies, radio and radio programs, music, documentaries, music videos, news and information in the field of sports, live and recorded television programs, e-books, tablets, video and online games, and children's programming, all by means of a personal computer or tablet.

(Int'l Class: 43)
Food and drink catering; providing food and beverage services in conjunction with providing facilities in the form of a private club for conducting business, meetings and conferences; providing conference room facilities, food and beverage lounge facilities, and amenities, namely, food, drink, catering, and restaurant; providing hotel reservation and coordination services for others by means of a global computer network; travel agency services, namely, making reservations and booking for temporary lodging; entertainment services, namely, providing a general purpose arena facility for sports, entertainment, trade shows, exhibitions and conventions.

| AMERICAN AIRLINES | 5279167 | September 5, 2017 | (Int'l Class: 09)<br>computer application software for mobile devices and handheld computers, namely, software for providing information in the fieldsof travel, transportation and loyalty award programs; computer application software for mobile devices, namely, software for tracking and redeeming loyalty program awards; computer application software for mobile devices and handheld computers, namely, software for ticketing passengers, checking reservations, and checking flight status<br><br>(Int'l Class 38) Providing Internet access |
|---|---|---|---|
| AMERICAN AIRLINES | 5592865 | October 30, 2018 | (Int'l Class: 36)<br>Issuance of credit cards through a licensee |
| AMERICAN AIRLINES | 5573314 | October 2, 2018 | (Int'l Class: 25)<br>Clothing, namely, shirts, jackets, fleece tops, t-shirts, sweatshirts, pants, shorts, skirts, sweat pants, pajamas, socks, and coats; headwear<br><br>(Int'l Class:28)<br>Toys, namely, model airplanes; scale model vehicles; plush toys; toy building blocks for model airplane sets; dolls, and dolls' clothes; playing cards<br><br>(Int'l Class: 36)<br>Banking; real estate affairs, namely, real estate lending services; aircraft financing; credit union services; financial services for credit union members, namely, financial transactions in the nature of bank transactions, credit card transactions, debit transactions and credit transactions, consumer and mortgage lending, securities brokerage, mortgage and loan insurance services, and brokerage services, namely, real estate brokerage and real estate lending services; Issuance of credit cards through a licensee |

| Design Only | 4449061 | December 10, 2013 | (Int'l Class: 35) promoting the goods and services of others by means of a discount rewards program and an incentive awards program whereby purchase points are awarded for purchases made by vendor subscribers and travel conducted by member subscribers which can then be redeemed for merchandise and travel; Online retail store services featuring toys, jewelry, books, office supplies, consumer electronics, music, sporting equipment, gifts, travel related goods and services, apparel, home and garden-related items, general retail merchandise, gift cards, and private club membership.<br><br>(Int'l Class: 39) air transportation of passengers, cargo, and freight; providing travel agency services, namely, providing transportation reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation transportation reservation services by means of a global computer network; providing information in the field of travel by means of a global computer network.<br><br>(Int'l Class: 43) providing travel agency services, namely, providing temporary lodging reservation services for others. |
|---|---|---|---|
| Design Only | 5559145 | September 11, 2018 | (Int'l Class: 25) clothing, namely, shirts, jackets, fleece tops, t-shirts, sweatshirts, pants, shorts, skirts, sweat pants, pajamas, socks, and coats; headwear<br><br>(Int'l Class: 28) toys, namely, model airplanes; scale model vehicles; plush toys; toy building blocks for model airplane sets; dolls, and dolls' clothes; playing cards<br><br>(Int'l Class: 35) promoting goods and services of others by means of loyalty program, discount program, promotional program and an incentive awards program whereby points are earned or awarded for purchases made by members which can then be redeemed for merchandise, services and travel; promoting goods and services of others by means of providing an on-line shopping mall with links to the retail web sites of others in the field of books, computers, software, office supplies, consumer electronics, music, sporting and recreational equipment, gifts, gift cards, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise; provision, |

organization, operation, and administration of a loyalty program, a discount program, a promotional program and an incentive awards program for customers whereby points are earned for purchases made via credit cards which can be redeemed for merchandise, services and travel; provision, organization, operation, and administration of loyalty, discount, promotional, and incentive programs, namely, managing and tracking the transfer and redemption of points that are earned or awarded for purchases made by members; provision of clerical and secretarial services; providing facilities, office machines and equipment for conducting business, business meetings, and conferences; providing professional support staff to assist in the conducting of office business, meetings and conferences; promotion of travel insurance services of others.

(Int'l Class: 36)
banking; real estate affairs, namely, real estate lending services; aircraft financing; credit union services; financial services for credit union members, namely, financial transactions in the nature of bank transactions, credit card transactions, debit transactions and credit transactions, consumer and mortgage lending, securities brokerage, mortgage and loan insurance services, and brokerage services, namely, real estate brokerage and real estate lending services; issuance of credit cards through a licensee

(Int'l Class: 38)
providing internet access

(Int'l Class: 39)
air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation reservation services in the nature of coordinating travel arrangements for individuals and groups; providing information in the field of travel; ground support services in the field of air transportation, namely, marking, sorting, loading, unloading, transfer, and transit of cargo and passengers' luggage; providing information concerning cargo and passengers' luggage in transit and delivery; air travel passenger ticketingand check-in services; airport ramp services; transporting aircraft at airport; providing aircraft parking and storage; aircraft towing; transportation services, namely, checking of baggage; airport services featuring transit loungefacilities for passengers; booking and

| | | | |
|---|---|---|---|
| | | | providing ancillary travel services, namely, making reservations in the nature of seat selection, baggage check-in; airport ramp services, namely, transfer of checked baggage to aircraft; airport ramp services, namely, transfer of carry-on baggage to aircraft; airline services, namely, providing priority boarding for customers, and access to airport lounge facilities; air passenger wheel-chair services at airport; leasing of aircraft; leasing of components of aircraft; leasing of aircraft engines; transporting of aircraft engines for others; airport services featuring transit lounge facilities for passengers.<br><br>(Int'l Class: 41)<br>providing online electronic publications, namely, online magazines and online newsletters in the field of general interest; publication of magazines; providing in-flight and airport lounge entertainment services, namely, providing movies, audio and audio programs, music, documentaries, music videos, news and information in the field of sports, live and recorded television programs, e-books, audio books, tablets, video and online games, and children's programming; travel services, namely, providing headphones on aircraft for use for entertainment purposes<br><br>(Int'l Class: 43)<br>providing conference rooms; food and drink catering; café services; restaurant services; bar services; providing conference room facilities; providing lounge facilities for providing food and drink; providing hotel reservation and coordination services for others; hotel services; restaurant services, namely, providing of food and drink in airports and on aircraft<br><br>(Int'l Class: 45)<br>facilitating expedited passenger screening, namely, providing priority access to airline passenger and baggage security screening |
| | 5441150 | April 10, 2018 | (Int'l Class: 36)<br> issuance of credit cards through a licensee |
| AMERICAN and Design<br><br>American | 5288639 | September 19, 2017 | (Int'l Class: 35)<br>sales promotion; promoting the goods and services of others by means of loyalty program, discount program, and an incentive awards program whereby purchase points are earned or awarded for purchases made from vendor subscribers or travel conducted by member subscribers which can then be redeemed for merchandise and travel; online retail store services featuring gift cards and private |

| | | | |
|---|---|---|---|
| | | | club membership; promoting the goods and services of others by means of providing an on-line shopping mall with links to the retail web sites of others in the fields of books, computers, software, office supplies, consumer electronics, music, sporting and recreational equipment, gifts, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise<br><br>(Int'l Class: 39)<br>air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and for groups, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation reservation services by means of a global computer network, namely, coordinating travel arrangements for individuals and for groups; providing information in the field of travel by means of a global computer network |
| AMERICAN AIRLINES AADVANTAGE and Design<br><br>**American Airlines**<br>**AAdvantage** | 5360206 | December 19, 2017 | (Int'l Class 35)<br>promoting the goods and services of others by means of discount program and an incentive awards program whereby purchase points are awarded for purchases made by vendor subscribers or travel made conducted by membersubscribers which can then be redeemed for merchandise and travel; online retail stores services featuring gift cards and private club membership; Promoting the goods and services of others by means of providing an on-line shopping mall with links to the retail web sites ofothers in the field of books, computers, software,office supplies, consumer electronics, music,sporting and recreational equipment, gifts, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise<br><br>(Int'l Class 39)<br>air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation travel reservation services for others by means ofan incentive rewards program.<br><br>(Int'l Class 41)<br>providing online electronic publications, namely,an online magazine and an online newsletter |

| | | | |
|---|---|---|---|
| | | | (Int'l Class 43)<br>providing food and beverage services for others and hotel accommodation services for others by means of an incentive rewards program, namely, providing hotel accommodation reservation services for others and providing restaurant reservation services for others. |
| AADVANTAGE | 2187483 | September 8, 1998 | (Int'l Class: 35)<br>promoting the goods and services of others by means of an incentive awards programs, whereby purchase points are awarded for purchase made from vendor subscribers, which can then be redeemed for merchandise and travel<br><br>(Int'l Class: 39)<br>providing air transportation services featuring a program of bonus flights for frequent travelers |
| AADVANTAGE | 5640441 | January 1, 2019 | (Int'l Class: 35)<br><br>Promoting goods and services of others by means of loyalty program, discount program, promotional program and an incentive awards program whereby points are earned or awarded for purchases made by members which can then be redeemed for merchandise, services and travel; promoting goods and services of others by means of providing an on-line shopping mall with links to the retail web sites of others in the field of books, computers, software, office supplies, consumer electronics, music, sporting and recreational equipment, gifts, gift cards, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise; a loyalty program, a discount program, a promotional program and an incentive awards program whereby points are earned for purchases made via credit cards which can be redeemed for merchandise, services and travel; managing and tracking the transfer and redemption of points that are earned or awarded for purchases made by members; customer incentive loyalty, discount, and reward programs featuring information on and access to special events offered to members; promotion of special events of others<br><br>(Int'l Class: 36)<br><br>Issuance of points of value; issuance of award miles of value; Issuance of credit cards through a licensee; Electronic commerce payment service that enables consumers to use loyalty points, reward points and miles to make online purchases, in whole or in part, of goods and services; Electronic commerce payment service that enables consumers to use loyalty points, reward points, and miles |

| AADVANTAGE | 5441149 | April 10, 2018 | (Int'l Class: 36)<br>issuance of credit cards through a licensee |
|---|---|---|---|
| AADVANTAGE EXECUTIVE PLATINUM | 2247386 | May 25, 1999 | (Int'l Class: 39)<br>transportation of passengers by air, namely, providing a program of bonusflights for frequent travelers |
| AADVANTAGE GOLD | 3789842 | May 18, 2010 | (Int'l Class: 39)<br>transportation of passengers by air, namely, providing a program of bonusflights for frequent travelers |
| AADVANTAGE PLATINUM | 3789843 | May 18, 2010 | (Int'l Class: 39)<br>transportation of passengers by air, namely, providing a program of bonusflights for frequent travelers |
| AADVANTAGE | 4897372 | February 9, 2016 | (Int'l Class: 35)<br>sales promotion; promoting the goods and services of others by means of loyalty program, discount program, and an incentive awards program whereby purchase points are earned or awarded for purchases made from vendor subscribers or travel conducted by member subscribers which can then be redeemed for merchandise and travel; retail store services featuring gift cards and private club membership services; promoting the goods and services of others by means of providing an on-line shopping mall with links to the retail web sites of others in the field of books, computers, software, office supplies, consumer electronics, music, sporting and recreational equipment, gifts, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise.<br>(Int'l Class: 39)<br>air transport of passengers, cargo, andfreight; providing travel agency services, namely, providing travel reservation services, namely, coordinating travel arrangements for individuals, providing air transportation reservation services, providing cruise reservation services, and providing vacation reservation services, namely, coordinating vacation travel arrangements for individuals, by means of an incentive rewards program<br><br>(Int'l Class: 43)<br>providing food and beverage servicesfor others and hotel accommodation services for others by means of an incentive rewards program, namely, providing hotel accommodation reservation services for others and providing restaurant reservation services for others |

| AADVANTAGE EXECUTIVE PLATINUM | 5730804 | April 23, 2019 | (Int'l Class: 35) |
|---|---|---|---|
| | | | promoting goods and services of others by means of a loyalty program, discount program, promotional program and an incentive awards program whereby points are earned or awarded for purchases made by members which can then be redeemed for merchandise, services and travel; promoting goods and services of others by means of providing an on-line shopping mall with links to the retail web sites of others in the field of books, computers, software, office supplies, consumer electronics, music, sporting and recreational equipment, gifts, gift cards, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise; provision, organization, operation, and administration of a loyalty program, a discount program, a promotional program and an incentive awards program whereby points are earned for purchases made via credit cards which can be redeemed for merchandise, services and travel; provision, organization, operation, and administration of loyalty, discount, promotional, and incentive award programs, namely, managing and tracking the transfer and redemption of points that are earned or awarded for purchases made by members; customer incentive loyalty, discount, and reward programs featuring information on and access to special events offered to members; promotion of special events of others |
| | | | (Int'l Class: 39) |
| | | | air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation reservation services in the nature of coordinating travel arrangements for individuals and groups; providing information in the field of travel; ground support services in the field of air transportation, namely, transfer and transport of passengers' luggage; providing information concerning passengers' luggage in transit and delivery; air travel passenger ticketing and check-in services; Transportation services, namely, checking of baggage; airport services featuring transit lounge facilities for passengers; booking and providing ancillary travel services, namely, making reservations in the nature of seat selection; airport ramp services, namely, transfer of checked baggage to aircraft; airport ramp services, namely, transfer of carry-on baggage to aircraft; airline services, |

| | | | |
|---|---|---|---|
| | | | namely, providing priority boarding for customers, and access to airport lounge facilities<br><br>(Int'l Class: 45)<br>Facilitating expedited passenger screening, namely, providing priority access to airline passenger and baggage security screening |
| AADVANTAGE PLATINUM | 5559148 | September 11, 2018 | (Int'l Class: 35)<br>promoting goods and services of others by means of a loyalty program, discount program, promotional program and an incentive awards program whereby points are earned or awarded for purchases made by members which can then be redeemed for merchandise, services and travel; promoting goods and services of others by means of providing an on-line shopping mall with links to the retail web sites of others in the field of books, computers, software, office supplies, consumer electronics, music, sporting and recreational equipment, gifts, gift cards, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise; provision, organization, operation, and administration of a loyalty program, a discount program, a promotional program and an incentive awards program whereby points are earned for purchases made via credit cards which can be redeemed for merchandise, services and travel; provision, organization, operation, and administration of loyalty, discount, promotional, and incentive award programs, namely, managing and tracking the transfer and redemption of points that are earned or awarded for purchases made by members; customer incentive loyalty, discount, and reward programs featuring information on and access to special events offered to members; promotion of special events of others<br><br>(Int'l Class: 39)<br>air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation reservation services in the nature of coordinating travel arrangements for individuals and groups; providing information in the field of travel; ground support services in the field of air transportation, namely, transfer and transport of passengers' luggage; providing information concerning passengers' luggage in transit and delivery; air |

| | | | |
|---|---|---|---|
| | | | travel passenger ticketing and check-in services; Transportation services, namely, checking of baggage; airport services featuring transit lounge facilities for passengers; booking and providing ancillary travel services, namely, making reservations in the nature of seat selection; airport ramp services, namely, transfer of checked baggage to aircraft; airport ramp services, namely, transfer of carry-on baggage to aircraft, airline services, namely, providing priority boarding for customers, and access to airport lounge facilities<br><br>(Int'l Class: 45)<br>Facilitating expedited passenger screening, namely, providing priority access to airline passenger and baggage security screening |
| AADVANTAGE GOLD | 5559147 | September 11, 2018 | (Int'l Class: 35)<br>Promoting goods and services of others by means of a loyalty program, discount program, promotional program and an incentive awards program whereby points are earned or awarded for purchases made by members which can then be redeemed for merchandise, services and travel; promoting goods and services of others by means of providing an on-line shopping mall with links to the retail web sites of others in the field of books, computers, software, office supplies, consumer electronics, music, sporting and recreational equipment, gifts, gift cards, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise; provision, organization, operation, and administration of a loyalty program, a discount program, a promotional program and an incentive awards program whereby points are earned for purchases made via credit cards which can be redeemed for merchandise, services and travel; provision, organization, operation, and administration of loyalty, discount, promotional, and incentive award programs, namely, managing and tracking the transfer and redemption of points that are earned or awarded for purchases made by members; customer incentive loyalty, discount, and reward programs featuring information on and access to special events offered to members; promotion of special events of others<br><br>(Int'l Class: 39)<br>Air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, |

| | | | |
|---|---|---|---|
| | | | vehicle reservation services for others, cruise reservation services for others and vacation reservation services in the nature of coordinating travel arrangements for individuals and groups; providing information in the field of travel; ground support services in the field of air transportation, namely, transfer and transport of passengers' luggage; providing information concerning passengers' luggage in transit and delivery; air travel passenger ticketing and check-in services; Transportation services, namely, checking of baggage; airport services featuring transit lounge facilities for passengers; booking and providing ancillary travel services, namely, making reservations in the nature of seat selection; airport ramp services, namely, transfer of checked baggage to aircraft; airport ramp services, namely, transfer of carry-on baggage to aircraft; airline services, namely, providing priority boarding for customers, and access to airport lounge facilities<br><br>(Int'l Class: 45)<br>Facilitating expedited passenger screening, namely, providing priority access to airline passenger and baggage security screening |
| AADVANTAGE PLATINUM PRO | 5556331 | September 4, 2018 | (Int'l Class: 35)<br>Promoting the goods and services of others by means of a loyalty, a discount program and an incentive awards program whereby purchase points are awarded for purchases made by vendor subscribers or travel made conducted by member subscribers which can then be redeemed for merchandise and travel; providing a loyalty, a discount and an incentive award program for customers that provide bonus flights for frequent travelers<br><br>(Int'l Class: 39)<br>Air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and groups, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation travel reservation services, namely, coordinating vacation travel arrangements for individuals and groups by means of a loyalty and an incentive rewards program; providing bonus flights for frequent travelers by means of a loyalty, a discount and an incentive award program |

| | | | |
|---|---|---|---|
| PLATINUM PRO | 5556330 | September 4, 2018 | (Int'l Class: 35)<br><br>Promoting the goods and services of others by means of a loyalty, a discount program and an incentive awards program whereby purchase points are awarded for purchases made by vendor subscribers or travel made conducted by member subscribers which can then be redeemed for merchandise and travel; providing a loyalty, a discount and an incentive award program for customers that provide bonus flights for frequent travelers<br><br>(Int'l Class: 39)<br><br>Air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and groups, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation travel reservation services, namely, coordinating vacation travel arrangements for individuals and groups by means of a loyalty and an incentive rewards program; providing bonus flights for frequent travelers by means of a loyalty, a discount and an incentive award program |
| AADVANTAGE MILEUP | 5993529 | February 25, 2020 | (Int'l Class: 35) Promoting goods and services of others by means of a loyalty program, a discount program, a promotional program and an incentive awards program, whereby points are earned or awarded for purchases made by members which can then be redeemed for merchandise, services and travel; promoting goods and services of others by means of a loyalty program, a discount program, a promotional program and an incentive awards program whereby points are earned for purchases made via credit cards which can be redeemed for merchandise, services and travel; provision, organization, and administration of loyalty, discount, promotional, and incentive award programs, namely, managing and tracking the transfer and redemption of points that are earned or awarded for purchases made by members; customer incentive loyalty, discount, and reward programs featuring information on and access to special events offered to members; promotion of special events; providing incentive awards program through issuance and processing of points of value to customers; providing incentive awards programs through issuance and processing of award miles of value to customers |

| | | | |
|---|---|---|---|
| | | | (Int'l Class: 36)<br><br>Issuance of credit cards through a licensee; electronic commerce payment service that enables customers to use loyalty points, reward points and miles to make online purchases, in whole or in part, of goods and services; electronic commerce payment service that enables customers to use loyalty points, reward points, and miles<br><br>(Int'l Class: 39)<br><br>Air transport of passengers; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and developing, arranging, marketing and booking tour packages and vacation-related travel and transportation-related reservations for others, namely, helicopters, cruises, boats, rail, rental cars and other motorized vehicles, bicycles, excursions, adventure activities and eco-tourism; providing information in the field of travel |

40.     These AMERICAN AIRLINES, AAdvantage®, and      ("Flight Symbol") trademark registrations are referred to here as "American Marks."

41.     American protects its investment in its brand by registering designs with the U.S. Copyright Office. It owns U.S. Copyright Registration Number VA0002130520 for the Flight Symbol. This copyright registration is referred to here as "American Copyright."

42.     The American Marks are widely recognized and immediately associated by the general public with American's loyalty program and various travel services. No other company uses terms or marks comparable ot the American Marks that enjoy a comparable commercial recognition or otherwise diminishes the fame and distinctiveness of the American Marks.

43.     Over the past decades, American used American Marks and American Copyright, alone and with other words and designs, in interstate commerce in connection with travel and transportation services, among numerous other goods and services.

44.     In addition to its registered rights, American has strong common law rights in its American Marks by virtue of extensive and continued use and promotion of such marks in commerce nationwide.

45.     American has invested millions of dollars in worldwide advertising and marketing to build the fame, reputation, and goodwill of American Marks. American advertises through a variety of media across the country, including television, radio, newspapers, magazines, and direct mail. American also promotes its products and services on the Internet.

46.     American Marks are uniquely associated with American and its quality products and customer service. The marks are assets of substantial value as symbols of American, its quality goods and services, and its goodwill.

47.     American Marks are distinctive designations of the source of origin of its services.

48.     American Marks are "famous" within the meaning of the dilution provisions of the Lanham Act, 15 U.S.C. §1125(c). They became famous before defendants' infringement began.

49.      As a result of American's extensive advertising and promotional efforts and continuous use, American Marks are famous, distinctive, and widely recognized by the general consuming public of the U.S. as a designation of source of the involved goods and services.

**E.     Defendants' Unauthorized and Improper Conduct**

50.     Defendants developed and operate a platform that collects AAdvantage® numbers and passwords of American customers, accesses their accounts through AA.com, downloads their information, and creates an unauthorized parallel repository of this data on defendants' servers.

51.     This platform is used in connection with TPG App.

52.     Defendants developed and operate TPG App.

53.     On September 27, 2021, TPG posted an announcement on its website stating that the TPG App is available for download. *See* https://thepointsguy.com/guide/tpg-app-overview/.

TPG App is currently available for iOS (Apple), and TPG plans to release an Android version of TPG App in the future. *Id.*

54.     TPG App purports to help users "learn about, earn and burn your points and miles" by, among other things, providing a platform to "sync[] all of [a user's] loyalty programs . . . to conveniently see all of [a user's] rewards in a single spot." *Id.*

55.     TPG App displays and links to TPG articles, many of which include links to advertiser products for which TPG App discloses TPG may receive compensation. TPG App links to an "Advertiser Disclosure," which says, *inter alia*, "[m]any of the credit card offers that appear are from credit card companies from which The Points Guy receives compensation. This compensation may impact how and where products appear (including, for example, the order in which they appear)."

56.     TPG App lists AAdvantage® as a "loyalty program," displaying American Marks and American Copyright.



57.     After a user selects American AAdvantage®, TPG App displays an associated log-in screen for users to input AAdvantage® information into TPG App, including AAdvantage® numbers or usernames and AAdvantage® passwords, again displaying American Marks and American Copyright.

58.     The "American AAdvantage" login page on TPG App appears substantially similar to the login page for the American App and solicits the same AAdvantage® customer information: AAdvantage® number, Password, and Last name.

| **TPG App** | **American App** |
|:---:|:---:|
|  |  |

59.     TPG App stores AAdvantage® user credentials. After TPG App users insert AAdvantage® credentials, TPG App logs on to the AAdvantage® member accounts through AA.com, with a link to the Account Summary page.

60.     If users link their AAdvantage® account, a page is displayed purporting to show their AAdvantage® information, again displaying American Marks and American Copyright.

- 29 -



61.    If users select "American AAdvantage" under "My Program," they are taken to a summary page that purports to summarize the user's AAdvantage® account, again displaying American Marks and American Copyright.

62.    The summary page includes a user's AAdvantage® number, current miles, expiration date, and status. It also purports to summarize "Status benefits" of the AAdvantage® program and includes headings of AAdvantage® statuses (Gold, Platinum, Platinum Pro, Executive Platinum) and offers descriptions.

63.    The summary page appears substantially similar to the AAdvantage® member page on the American App, which similarly displays an AAdvantage® member's AAdvantage® number, current award miles, expiration date, and progress toward elite status qualifications (AAdvantage Gold®, AAdvantage Platinum®, AAdvantage Platinum Pro®, and AAdvantage Executive Platinum®).

**TPG App**                              **American App**

        

64.    On the "Award Explorer" tab in TPG App, TPG App purports to calculate award pricing to show the redeemable value of a user's points for specific airline routes.

65.    After selecting "Award Explorer," a TPG App user is prompted to put in a departure airport, arrival airport, round trip or one way, and number of passengers and then select the "loyalty programs" across which to search.



66.    "American AAdvantage" is listed as one of the "loyalty programs."

67.    After a user searches a trip, TPG App displays a results page. If a user has selected "American AAdvantage," either alone or together with other loyalty programs, the results page displays American Marks and American Copyright.



68.     The results page purports to summarize what class(es) of American airline tickets an AAdvantage® member can purchase using AAdvantage® points, based on the user's number of AAdvantage® points.

69.     If a user selects the American AAdvantage® result, they are taken to a trip summary page that purports to describe the "transferrable points toward this trip" based on class of ticket.

70.     This trip summary page displays American Marks and American Copyright and lists an AAdvantage® members' available points.



71.    The trip summary page also includes a link to "Booking instructions" on "[h]ow to book" an airline ticket with points. TPG App displays two booking options: Option 1: Go to AA.com or Option 2: ExpertFlyer. TPG App touts that "[w]ith ExpertFlyer you can search award tickets, seat availability, upgrades, fares, and more" and provides a link to expertflyer.com.

72.    The trip summary page, which displays American Marks and American Copyright also displays an advertisement for a credit card, from which TPG discloses it may receive compensation, with the heading "Boost your points" and a link to "Apply Now."



73.     TPG App accesses AA.com and AAdvantage® accounts through Quantum Metrics.
By gaining access to and using AA.com, TPG agrees to be bound by the Use Agreement "without
limitation or qualification." TPG App submits AAdvantage® member credentials to log into a
user's AAdvantage® account through AA.com. By submitting these credentials, TPG App
acknowledges that "[b]y logging in, [it] accept[s] the AAdvantage terms and conditions," which
incorporate the Use Agreement. TPG App is engaging in unauthorized access that American has
asked defendants to stop.

74.     TPG App accesses AA.com to extract proprietary data related to AAdvantage®
accounts. To date, American has identified dozens of unique IP addresses associated with log-in
attempts from TPG App and thousands of unique attempts to access AA.com from TPG App.

75.     Defendants' access of AA.com and AAdvantage® account data is unauthorized. It
uses American's valuable computer capacity and deprives American of its ability to possess and
use that capacity to serve its customers.

76.     Defendants have no contract with or consent from American to collect or distribute AAdvantage® data or to access and use content of AA.com. American does not endorse TPG App. American has no contract addressing treatment of its data in the TPG App platform or with respect to the security of the TPG App platform.

77.     Through TPG App, defendants present themselves as authorized distributors of proprietary American information. To trade off goodwill that American has with its customers, TPG App uses American Marks and American Copyright to create the impression that it is an authorized collector and distributor of AAdvantage® information. This leads the public to believe that TPG App is sponsored or authorized by American when it is not.

78.     Although the TPG App does provide disclosures indicating that the app is "not sponsored or endorsed by any third parties accessible through the Services," such disclosures are not reasonably calculated to be read or to meaningfully inform consumers that TPG App is not an authorized non-partner of American, given that the defendants' marketing claims and the design of the TPG App more effectively communicate to consumers that TPG App is an authorized way for AAdvantage® members to access American services and obtain information about the AAdvantage® program. Moreover, the TPG App does not disclose that its use of marks and accessing of AA.com and the data contained within it are unauthorized, constitute a breach of American's terms and conditions, or that using the TPG App to access AA.com breaches American's terms and conditions.

79.     Defendants are causing dilution of the quality of American Marks and other harm to American's business reputation and goodwill, for which it has no adequate remedy at law.

80.     TPG App uses American Marks and American Copyright in interstate commerce by using them to advertise and promote travel and credit-card related services on TPG App.

81.     Through TPG App, defendants wrongly profit from unauthorized use of proprietary American information and American Marks and American Copyright. Indeed, TPG App's privacy policy expressly states that it discloses the information it collects to affiliates, business clients, to advertising platforms, and for other services. In other words, TPG App's Privacy Policy confirms that defendants know the value of the data it is collecting from AA.com in violation of AAdvantage® terms and conditions and Use Agreement as well as the substantial time and money American invested in establishing AAdvantage® and AA.com as respected brands that customers can trust to protect that data. Defendants are working actively to monetize and profit from American's data and the underlying processes, structures, and goodwill American invested in originally to compile it.

82.     To ensure the best service for its valued customers, American wants and has the right to be the place that AAdvantage® members come to access their AAdvantage® account, not TPG App or other unauthorized third-party applications.

83.     On information and belief, TPG App has been downloaded some 100,000 times from the Apple App Store. On information and belief, many of defendants' customers have downloaded the App because they incorrectly believe it to be an authorized way to access and take advantage of their AAdvantage® accounts.

### F.      Defendants' Use of the American Marks Is Not Fair

84.     On information and belief, defendants may contend that their uses of the American Marks is protected by the doctrines of statutory or nominative fair use.

85.     The statutory fair use defense under 15 U.S.C. §1115(b)(4) does not apply because defendants are not using the American Marks "otherwise than as a mark" or in a way that is merely "descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." To the contrary, defendants are using the American Marks

expressly to identify American Airlines as the source of the goods and services associated with the American Marks rather than the goods or services themselves or to identify their geographic origin. defendants are also using the American Marks in bad faith as set forth in this Complaint.

86.     The nominative fair use defense does not apply because defendants are using more of the American Marks than is necessary to identify defendants' products or services. To the contrary, the presentation of the American Marks in defendants' app, website, and advertising includes stylistic elements and prominent placement that are unnecessary and placed in a context that suggests affiliation, sponsorship, and/or endorsement by American. Furthermore, defendants' use of the American Marks in defendants' app, website, and advertising is excessive and being done in violation of the American website terms and conditions and Use Agreement. In addition, defendants' use of the American Marks is not fair because the package of services offered by defendants differs significantly from the package of services offered by American through the AAdvantage® program and AA.com.

### G.      Defendants Will Not Cease their Unauthorized Conduct

87.     Defendants know that their access to AA.com and extraction of AAdvantage® data is not authorized by American. Defendants have actual knowledge of the Use Agreement and know that this practice violates the Use Agreement, but they have refused to stop.

88.     Prior to creating TPG App, defendants were aware that unauthorized data extraction violates American's contractual rights. In addition to TPG, Red Ventures is the parent company of New Imagitas, Inc. d/b/a ExpertFlyer ("ExpertFlyer"), a website that purports to "give you the best information so you can buy your [airline] tickets anywhere." Prior to Red Ventures's acquisition of that company, American had disputes with ExpertFlyer related to ExpertFlyer scraping fare information, AAdvantage® information, and other related data from AA.com and distributing it without American's authorization. In those disputes, American maintained that these actions

violated the Use Agreement, the AAdvantage® terms and conditions, and other of American's property rights. American and ExpertFlyer eventually entered an agreement granting ExpertFlyer access to certain data, but only subject to ExpertFlyer's adherence to rules, practices, and data protection terms that American negotiated with it. This agreement is still in effect and, indeed, was assigned to the current ExpertFlyer entity at ExperFlyer's request in connection with its sale to New Imagitas, an affiliate of Red Ventures. Red Ventures is aware of these earlier disputes and American's positions on data ownership and control of its intellectual property.

89.    Last year, defendants reached out to American about potential collaboration on TPG App, sending "American Airlines x TPG App API" request. Following discussions, American concluded that it did not wish to collaborate on TPG App or provide AAdvantage® access through TPG App. American asked defendants to not include any feature that integrates AAdvantage® member accounts with TPG App.

90.    On September 24, 2021, American learned that defendants ignored its request, choosing instead to include such integration into TGP App. Specifically, TPG App prompts AAdvantage® members to enter log-in credentials to access their account information, while logging and storing users' credentials and other relevant data in a repository owned by defendants.

91.    This revelation was unexpected and disappointing, particularly in light of security concerns such integration could pose. Defendants created a second collection of AAdvantage® member data with no oversight and no authorization from American. American is not aware of TPG App's safeguards of AAdvantage® data and has no control over collection and protection of AAdvantage® member information through TPG App.

92.    Defendants have confirmed that TPG App allows AAdvantage® members to access their accounts while storing log-in credentials and other data. American requested that defendants

immediately disable this function on TGP App, cease storing AAdvantage® account credentials, and securely remove all American customer data that already has been stored. Defendants refused. Instead, they said they were concerned about removing a feature while TPG App was in its launch week, ignoring the security concerns that TPG App imposes on American's customers.

93.     Through the TPG App, defendants continue to collect confidential data about AAdvantage® members and use that data to log into and access information from AA.com.

94.     American continued to raise its concerns with defendants about their unauthorized access, use, and storage of confidential data about AAdvantage® members and improper access of AA.com, in the hopes of avoiding litigation and preserving the parties' otherwise productive and growing business relationship.

95.     Most recently, on January 9, 2022, American again demanded by letter that defendants cease their unauthorized conduct, again telling defendants that accessing, collecting, storing, and using AAdvantage® member information violates the American website terms and conditions and infringes on American's intellectual and property rights, but defendants chose to continue their conduct heedless of American's requests to stop.

96.     As of this filing, defendants have not taken steps to remove this function or cease collecting personal data of American customers, forcing American to file this lawsuit.

97.     Worse, still, on January 11, 2021, Defendant The Points Guy, LLC, purported to commence litigation against American Airlines, Inc. in the Superior Court of the State of Delaware (the "Delaware Action"). The lawsuit advances specious tortious interference claims and seeks a declaratory judgment that TPG App did not "infringe[] any valid copyright, trademark, trade secret or other intellectual property rights of AA"; that "TPG has not breached any contract with AA"; and that "TPG has not tortiously interfered with any valid contracts to which AA is a party." By

bringing the Delaware Action in the Superior Court of Delaware, The Points Guy, LLC has expressly breached the AA.com terms and conditions, which provide that the exclusive forum for resolving "*[a]ny* lawsuit brought by you related to your access to, dealings with, or use of [AA.com]" is "the state or federal courts of Tarrant County, Texas." (emphasis added).

98.     The Delaware Action is further indication of defendants' bad faith with regard to their use of American's intellectual property, customer relations, and goodwill. Prior to the filing, American was engaged in active, good-faith negotiations to resolve this dispute. Indeed, as if to distract from its filing, defendants' general counsel purported to continue those discussions by asking which terms and conditions apply *following* the filing and days before American was even aware of the Delaware Action's commencement. Even as American was attempting to resolve this matter amicably, The Points Guy, LLC, abandoned good-faith discussions in favor of a meritless lawsuit brought in the wrong forum.

99.     Having learned of the Delaware Action on January 14, 2021, American reluctantly moved to commence this action in the proper, contractually agreed-upon jurisdiction.

## COUNT I
### (Breach of AA.com Use Agreement)

100.     Plaintiffs reallege the material factual allegations in the preceding paragraphs.

101.     The AA.com Use Agreement is a valid agreement binding on defendants.

102.     As a party, American is entitled to sue for its breach. American has met all conditions precedent to and otherwise complied with the contract.

103.     Upon defendants' use of AA.com, they agreed to be bound by the terms of the Use Agreement.

104.    By accessing AA.com to access, collect, and store AAdvantage® information for commercial purposes and gain, without authorization by American, defendants breached the Use Agreement. This breach is material, willful, and without excuse.

105.    Defendants' acts have caused and, unless and until such acts are enjoined by this Court, will continue to cause, great and irreparable injury to American.

106.    American has no adequate remedy at law for the wrongful acts in connection with breach of the AA.com Use Agreement.

107.    American has sustained injury, damage, and loss based on defendants' breach of the AA.com Use Agreement.

**COUNT II**
**(Tortious Inference with Contract)**

108.    Plaintiffs reallege the material factual allegations in the preceding paragraphs.

109.    The AA.com Use Agreement prohibits AAdvantage® members from giving access to their accounts to "any third party on-line service, including, but not limited to any mileage management service, mileage tracking service, or mileage aggregation service," or accessing their account data from the foregoing services. By promoting prohibited forms of account access, defendants knowingly induced American's customers to breach the Use Agreement. Defendants did not disclose to American's customers that the accessing of such account information is for the benefit of defendants and in violation of the Use Agreement.

110.    Defendants' interference with American's relationship with its customers has hindered, precluded, lessened the benefits, or increased the burdens of those relationships, all without legal justification or excuse.

111.    Defendants' actions hinder, interfere with, change, and burden American's relationships with its customers. They knew that it was certain or substantially certain to occur as a result of their conduct.

112.    Defendants' acts have caused and, unless and until such acts are enjoined by this Court, will continue to cause, great and irreparable injury to American.

113.    American has no adequate remedy at law for defendants' the wrongful acts.

114.    American has sustained injury, damage, and loss based on defendants' interference.

### COUNT III
### (Unfair Competition by Misappropriation)

115.    Plaintiffs reallege the material factual allegations in the preceding paragraphs.

116.    American has invested substantial time, labor, skill, and millions of dollars in developing, marketing, and maintaining AA.com and its AAdvantage® program. AA.com is a proprietary website consisting of a privately owned computer system, with supporting servers, databases, routers, networks, bandwidth, computer capacity, firewalls, and other equipment. The AA.com servers are located in Texas. Through AA.com, American provides time-sensitive proprietary fares to actual and potential customers in an interactive format. Customers can shop for and book travel on AA.com and perform a number of other activities, including management of AAdvantage® accounts and check-in for flights.

117.    Defendants' platform collects AAdvantage® numbers and passwords of American customers, accesses their accounts through AA.com, downloads their information, and creates an unauthorized parallel repository of this data on defendants' servers. Defendants' App purports to offer many of the exact same services American offers on AA.com, including but not limited to, calculating rewards pricing, summarizing status benefits, summarizing AAdvantage® account information, and giving descriptions of the AAdvantage® loyalty program.

118.     Defendants have created their App, therefore, to directly compete with services on AA.com by collecting, compiling, and deploying proprietary data American owns. In doing so, defendants have violated the AA.com website terms. And in doing so, defendants have gained a special advantage in competition against AA.com through the "free ride" of accessing, using, and expropriating systems and data AA.com invested substantial sums in creating, even though defendants have been burdened with little or none of the expenses American bore in creating those services and data repository.

119.     Defendants' conduct has caused commercial damage to American in an amount to be determined at trial.

## COUNT IV
### (Trespass)

120.     Plaintiffs reallege the material factual allegations in the preceding paragraphs.

121.     Defendants have intentionally, and without authorization, accessed and interacted with AA.com. Access to AA.com and proprietary information in it is granted only to users who abide by the terms and conditions of its Use Agreement. By disregarding the terms and conditions of the Use Agreement, and American's objections to such activities, defendants have unlawfully gained access to and interfered and intermeddled with American's private property.

122.     Defendants have used AA.com without permission to enrich their businesses or to profit from the public at large, depriving American of its own resources.

123.     Defendants' conduct constitutes trespass that did and will harm AA.com and American's business.

124.     Defendants' acts have caused and, unless and until such acts are enjoined by this Court, will continue to cause, great and irreparable injury to American.

125.     American has no adequate remedy at law for defendants' trespass.

126.    American has sustained injury, damage, and loss based on defendants' trespass.

## COUNT V
### (Trademark Infringement under 15 U.S.C. §1114)

127.    Plaintiffs reallege the material factual allegations in the preceding paragraphs.

128.    American Marks are inherently distinctive and continue to acquire distinctiveness and goodwill in the marketplace through American's use of those marks in commerce. As a result of its widespread and continuous use, American Marks have become associated in the minds of travelers and travel loyalty program users with American. The reputation and goodwill that it has built up in American Marks is of great value to American.

129.    The services for which defendants use American Marks are identical and/or substantially similar to services offered by American.

130.    Defendants' conduct—including prominent use of American Marks in purporting to summarize a user's personal AAdvantage® data and giving descriptions of the AAdvantage® program—has caused and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of TPG App with American, or as to the origin, sponsorship or approval of defendants' goods and services by American.

131.    Defendants' acts constitute infringement of American Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114(1).

132.    American did and will continue to suffer irreparable harm for which there is no adequate compensation at law as a result of defendants' infringement of American Marks.

133.    American is entitled to monetary damages for defendants' infringement.

134.    Defendants have acted with knowledge of American's ownership of American Marks and with an intention or willful blindness to benefit from the goodwill symbolized by these

marks. Defendants willfully infringed American Marks, and the intentional nature of their actions makes this case exceptional under 15 U.S.C. §1117(a).

135.    American has been, is now, and will be irreparably harmed by this infringement and, unless enjoined by the Court pursuant to 15 U.S.C. §1116, defendants will continue to infringe American Marks and cause harm and irreparable injury to American.

136.    American has no adequate remedy at law for defendants' infringement.

137.    American has sustained injury, damage, and loss based on defendants' infringement.

## COUNT VI
### (Dilution under 15 U.S.C §1125(c))

138.    Plaintiffs reallege the material factual allegations in the preceding paragraphs.

139.    Defendants' use of the American Marks has lessened and will continue to lessen the capacity of American Airlines' famous and distinctive American Marks to distinguish American Airlines' products and services from those of others, and has diluted the distinctive quality of the famous and nationally recognized American Marks.

140.    TPG app's display of the American Marks leads America's customers to believe there is an authorized relationship between TPG App and American covering how AAdvantage® data in TPG App is collected, stored, and shared, where no relationship exists. It may also lead users to believe their AAdvantage® data is protected in TPG App by the AAdvantage® terms & conditions and American's Use Agreement, even though American does not control the collection, storage, or sharing of user data in TPG App. Because American does not have the capacity to control these risks, any harm caused by TPG's practices with respect to collection, storage, and sharing of user data is likely to be improperly ascribed to American through TPG's use of the American Marks. TPG App's display of credit card advertisements in connection with

AAdvantage® points searches may cause a user to believe that there is an authorized relationship between the advertised credit card, American, and TPG App, when there is not.

141.     Defendants have derived and continue to derive substantial revenue and profits from the past and ongoing dilution of the American Marks as a result of their unauthorized uses of the American Marks.

142.     Defendants acted with knowledge of American's ownership of American Marks and with an intention or willful blindness to benefit from the goodwill symbolized by these marks. Indeed, defendants even approached American to collaborate on the TPG App, including use of the American Marks. Yet when American declined to participate, TPG proceeded to use the American Marks anyway.

143.     Defendants' use of the American Marks constitute dilution in violation of Section 43(c) of the Lanham Act 15 U.S.C. §1125(c).

144.     The factors identified in the Trademark Dilution Revision Act compel the conclusion that dilution is "likely." In particular, and as set forth in greater detail above: (i) defendants are using the actual American marks, not a facsimile or euphemism; (ii) the American Marks have significant inherent and/or acquired distinctiveness; (iii) American is engaging in substantially exclusive use of the American Mark; (iv) the American Marks are indisputably world famous; (v) defendants intended to create an association between their services and the American Marks; and (vi) on information and belief, defendants' conduct has already caused defendants' customers to actually associate their activities with the American Mark.

145.     The intentional nature of defendants' actions entitles American to recover profits, damages and costs, and attorney fees under 15 U.S.C. §1117(a).

146.    Defendants' dilution of the American Marks has caused American Airlines damages in an amount to be determined at trial.

147.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by defendants' actions.

148.    American Airlines has no adequate remedy at law for defendants' dilution of the American Marks.

## COUNT VII
### (Dilution Under Texas State Law)

149.    Plaintiffs reallege the material factual allegations in the preceding paragraphs.

150.    American Airlines has common law rights under Texas law to the American Marks.

151.    Defendants' acts as described above constitute dilution and dilute the distinctive quality of the famous American Marks, resulting in damage to American Airlines, to its business reputation, to the uniqueness and individuality of the American Marks, and to the substantial business and goodwill symbolized by the American Marks in violation of Texas's Anti-Dilution Statute, Tex. Bus. & Com. Code §16.29.

152.    American Airlines has no adequate remedy at law for defendants' dilution of its common law trademark rights.

## COUNT VIII
### (False Designation of Origin and Unfair Competition under 15 U.S.C. §1125(a))

153.    Plaintiffs reallege the material factual allegations in the preceding paragraphs.

154.    American has federal trademark rights in the American Marks.

155.    American has federal trademark rights in the term "AAdvantage" in connection with a loyalty program, as a result of its use of the "AAdvantage" mark to describe this program and associated services. It was one of the first companies to launch a loyalty program and launched

its AAdvantage® program in 1981. It has been a model for loyalty programs in the industry. American developed its distinctive AAdvantage® brand and program through significant efforts.

156.    Defendants are displaying and using the term "AAdvantage" and other American Marks in interstate commerce on TPG App in purporting to summarize a user's personal AAdvantage® information and providing descriptions of the AAdvantage® program.

157.    Defendants' conduct did and is likely to cause confusion, mistake, or deception as to their affiliation, connection, or association with American, or as to the origin, sponsorship, or approval of defendants' goods and services by American.

158.    The acts of defendants constitute false designation of origin, which is likely to cause and have confusion in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1117(a).

159.    Defendants' actions did and will cause irreparable injury to American, as well as monetary harm. Defendants' acts damage American by undermining consumers' association of "AAdvantage" and other American Marks with American. Unless enjoined, defendants will continue to misrepresent and mislead the public that their services are in some manner connected with, sponsored by, affiliated with, related to, or approved by American. Accordingly, American is entitled to injunctive relief.

160.    American has no adequate remedy at law.

161.    American has sustained injury, damage, and loss based on defendants' actions.

**COUNT IX**
**(Copyright Infringement under 17 U.S.C. §101)**

162.    Plaintiffs reallege the material factual allegations in the preceding paragraphs.

163.    American has a copyright registration for American Copyright, its Flight Symbol, Reg. No. VA0002130520 / 2016-06-03. The copyright is valid and enforceable.

164. Defendants had access to American Copyright because it is published on AA.com and on other places on the Internet. They copied American Copyright and display it on TPG App.

165. In copying American Copyright, defendants have violated U.S. copyright laws, specifically 17 U.S.C. §101, *et seq.* Defendants willfully infringed upon American Copyright.

166. American has been, is now, and will be irreparably harmed by defendants' copyright infringement and, unless enjoined by the Court per 17 U.S.C. §502, defendants will continue to infringe the American Copyright and cause harm and irreparable injury to American.

167. American has no adequate remedy at law.

168. American has sustained injury, damage, and loss based on defendants' infringement.

### COUNT X
### (Computer Fraud and Abuse under 18 U.S.C. §1030)

169. Plaintiffs reallege the material factual allegations in the preceding paragraphs.

170. American's computers and servers are used in or affecting interstate and foreign commerce and communication, and are therefore protected computers pursuant to 18 U.S.C. §1030(e)(2).

171. Defendants intentionally accessed and continue to access American's protected computers or servers without authorization as defined by the AA.com Use Agreement and obtain and continue to obtain information from protected American computers or servers, including AAdvantage® data, in violation of 18 U.S.C. §1030(a)(2)(C).

172. Defendants knowingly access American's protected computers and servers without authorization, and by means of this access obtained valuable information from American's computers and servers, including AAdvantage® data, in order to obtain something of value, in violation of 18 U.S.C. §1030(a)(4).

173.     Defendants' act of accessing American's protected computers and servers without authorization—on top of the normal access that is granted to all AAdvantage® members—necessarily increases the burdens and costs to run and maintain such systems.

174.     American's proprietary and confidential information that is the subject of this suit is not publicly available without using an AAdvantage® member's password and identification number to access American's servers and its users' accounts.

175.     American did and will suffer damage by reason of these violations, including harm to its content and programs, and expenses from being forced to investigate the unauthorized access and abuse of its computers and servers, with other losses and damages in an amount to be proven at trial, over $5000 aggregated over a one-year period.

176.     In addition, American did and will suffer irreparable harm and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants. Accordingly, American is entitled to injunctive relief.

## COUNT XI
### (Violation of Texas Harmful Access by Computer Act )

177.     Plaintiffs reallege the material factual allegations in the preceding paragraphs.

178.     Defendants have violated §33.02 of the Texas Penal Code.

179.     Among other things, American's terms prohibit use of "an AAdvantage member's password or personal identification number during log-in, unless you are: the AAdvantage member to whom that password or personal identification number is assigned (the 'Authorized AAdvantage member'); a family member of the Authorized AAdvantage Member, acting with the Authorized AAdvantage Member's permission; or an employee of the Authorized AAdvantage Member's employer, acting with the Authorized AAdvantage Member's permission." Defendants, however, regularly use the passwords or personal identification numbers of other AAdvantage® members

of whom they are not family members. Defendants furthermore regularly access passwords and persona identification numbers of AAdvantage® members without serving as an employee of the AAdvantage® Member's employer.

180.    In accessing AAdvantage® accounts and user information in violation of American's express terms, Defendants knowingly accessed American's servers without American's effective consent. American did not consent to defendants' access and collection of American's confidential and proprietary data. Defendants did and still do knowingly, and without consent, access AA.com.

181.    American has been harmed by this conduct in at least the following ways: (a) costs associated with American's response to defendants' unlawful access and collection of data; and (b) diminution in value of its product as a result of consumer confusion.

182.    Pursuant to Tex. Civ. Prac. & Rem. Code §143.001, defendants' violation of the Texas Penal Code makes them liable for harmful computer access of AA.com.

183.    American did and will suffer irreparable harm as a result of such actions by defendants and, unless enjoined, defendants will continue their harmful acts.

184.    American has no adequate remedy at law.

185.    American has sustained injury, damage, and loss based on defendants' actions.

**COUNT XII**
**(Unjust Enrichment)**

186.    Plaintiffs reallege the material factual allegations in the preceding paragraphs.

187.    In the alternative, without waiver of other claims, American asserts that defendants were and are unjustly enriched by taking undue advantage of AAdvantage® data. Defendants benefit from use of American's proprietary information and make a profit from offering American

flights through their application. Without authorization, defendants take undue advantage of American's information and data for their own benefit in violation of federal and state law.

188.    American did and will suffer irreparable harm as a result of such actions by defendants and, unless enjoined, defendants will continue their harmful acts.

189.    American has no adequate remedy at law.

190.    American was and will be injured by defendants' unlawful acts.

191.    American is entitled to restitution and equitable damages under quasi-contract theories of recovery.

## ATTORNEY FEES

192.    As a result of defendants' misconduct, American was required to retain the undersigned's services in prosecution of this claim. Pursuant to Tex. Civ. Prac. & Rem. Code §38.001 and §143.002, American seeks its reasonable and necessary attorney fees.

## CONDITIONS PRECEDENT

193.    All conditions precedent to these claims have been performed by American, have occurred, or have been waived.

## REQUEST FOR PERMANENT INJUNCTION

194.    Defendants and their agents, employees, representatives, and those in active concert or participation with them who receive actual notice of the Court's order, by personal service or otherwise, should be restrained and enjoined permanently from directly or indirectly undertaking any of the following conduct:

- Maintaining any feature or functionality that allows AAdvantage® members to log in to their account through defendants' websites or mobile applications;

- Storing AAdvantage® members' passwords and other stored data associated with such members;

- 53 -

- Extracting AAdvantage® information and data from the AA.com website and its proprietary servers or websites;

- Publishing or making use of any AAdvantage® information and data, including through their websites or mobile applications;

- Using a display of American's copyrighted material;

- Using a display of American's trademarks or logos, including those associated with AAdvantage® or the AA.com website; and

- Accessing and using the AA.com website and data in violation of the AA.com Use Agreement.

195.    Additionally, defendants should be ordered to securely remove all stored data captured or otherwise maintained from or associated with AAdvantage® member accounts, to provide reasonable validation and proof of the removal of all stored data captured or otherwise maintained from or associated with AAdvantage® members accounts, and to certify in writing that they have removed all such material.

### PRAYER FOR RELIEF

196.    Upon final trial, American requests that the Court enter a permanent injunction requiring defendants to comply with the restrictions set forth above.

For these reasons, plaintiffs American Airlines, Inc. and AAdvantage Loyalty IP Ltd. respectfully pray as follows:

a.  Defendants be cited to appear and answer in this case;

b.  The injunctive relief be granted as requested in this complaint;

c.  All damages be awarded that American has incurred due to defendants' conduct;

d.  Disgorgement be ordered of all ill-gotten revenues and benefits to defendants;

e.  Statutory damages be awarded, per 15 U.S.C. §1117(c) and (d), and 17 U.S.C. §504(c);

f.  Court costs and attorney fees be awarded to American, including for any appeal;

g.  Prejudgment and post-judgment interest be awarded to American; and

h.   All other relief be awarded to which American is justly entitled at law or in equity.

Dated: January 18, 2022                    Respectfully submitted,

*/s/ Lars L. Berg*
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telehpone:  (817) 332-2500
Facsimile:   (817) 878-9280

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

Howard S. Hogan
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 887-3640
(*pro hac vice forthcoming*)

ATTORNEYS FOR PLAINTIFFS
AMERICAN AIRLINES, INC. AND
AADVANTAGE LOYALTY IP LTD.