**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC. and** | § | |
| **AADVANTAGE LOYTALTY IP LTD.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | Civil Action No. 4:22-cv-00044-P |
| | § | |
| **RED VENTURES, LLC and THE** | § | |
| **POINTS GUY, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

---

**BRIEF IN SUPPORT OF RULE 12(B)(2) MOTION TO DISMISS AND RULE
12(B)(3) MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER**

---

**WICK PHILLIPS GOULD & MARTIN, LLP**

David J. Drez III (State Bar No. 24007127)
Colin P. Benton (State Bar No. 24095523)
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789
david.drez@wickphillips.com
colin.benton@wickphillips.com

**BECK REDDEN LLP**

David J. Beck (State Bar No. 00000070)
Alex B. Roberts (State Bar No. 24056216)
Jake McClellan (State Bar No. 24109525)
1221 McKinney Street, Suite 4500
Houston, Texas
Telephone: (713) 951-3700
Facsimile: (713) 951-3720
dbeck@beckredden.com
aroberts@beckredden.com
jmcclellan@beckredden.com

*Attorneys for Defendants Red Ventures, LLC and The Points Guy, LLC*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................................... 1

FACTUAL BACKGROUND ............................................................................................................ 2

ARGUMENT AND AUTHORITIES ............................................................................................ 4

I. Red Ventures LLC is not subject to personal jurisdiction in this forum. .................................... 4

    A.     RV is not subject to general jurisdiction in Texas. ................................................. 5

    B.     RV is not subject to specific jurisdiction in this case. ........................................... 6

          1.     AA cannot satisfy the elements of specific jurisdiction over RV. ........................................................................................................................... 7

II. AA's suit should be dismissed for improper venue. ................................................................. 11

    A.     Venue is improper because a substantial part of the events at issue occurred outside this District, including access of AA's website......................... 11

III. Alternatively, the Court should transfer this case to the Western District of Texas or to the District of Delaware. .......................................................................... 16

    A.     There are two alternative venues where this case could have been brought. ............................................................................................................................. 16

          1.     Transfer is proper to the Western District of Texas................................. 17

               a.     The private interest factors support transfer. ............................... 17

               b.     The public interest factors support transfer. ................................ 18

          2.     Transfer is proper to the District of Delaware. ......................................... 19

CONCLUSION .................................................................................................................................... 20

CERTIFICATE OF SERVICE ........................................................................................................ 21

# TABLE OF AUTHORITIES

*Cases*

*Admar Int'l, Inc. v. Eastrock, L.L.C.,*
    18 F.4th 783 (5th Cir. 2021) ......................................................................... 4, 5, 6, 7

*Aerus LLC v. Pro Team, Inc.,*
    No. Civ.A. 304CV1985M, 2005 WL 1131093 (N.D. Tex. 2005)............................................. 10

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.,*
    137 S.Ct. 1773 (2017)............................................................................................... 5

*Camatic Proprietary Ltd. v. Irwin Seating Co.,*
    No. 3:16-CV-0795-M, 2017 WL 2362029 (N.D. Tex. May 31, 2017) ...................... 17, 18, 19

*Cont'l W. Ins. Co. v. Liepke Invs., Ltd.,*
    No. 3:10-CV-1701-P, 2011 WL 13216993 (N.D. Tex. Mar. 8, 2011) .................................. 15

*Demond v. Infiniti HR, LLC,*
    No. 3:17-CV-1322-D, 2018 WL 4145053 (N.D. Tex. Aug. 30, 2018) ............................... 9, 10

*Diece-Lisa Indus., Inc. v. Disney Enters., Inc.,*
    943 F.3d 239 (5th Cir. 2019) ......................................................................................... 8, 9

*Frank v. P N K (Lake Charles) L.L.C.,*
    947 F.3d 331 (5th Cir. 2020) ......................................................................................... 5, 8

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011)...................................................................................................... 5, 6

*In re Genentech, Inc.,*
    566 F.3d 1338 (Fed. Cir. 2009)......................................................................................... 17

*In re Volkswagen AG,*
    371 F.3d 201 (5th Cir. 2004) ........................................................................................... 16

*In re Volkswagen of Am.,*
    545 F.3d 304 (5th Cir. 2008) ..................................................................................... 16, 17

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945)........................................................................................................ 4

*Johnston v. Multidata Systems Intern. Corp.,*
    523 F.3d 602 (5th Cir. 2008) ............................................................................................ 4

*Lewis v. Fresne,*
    252 F.3d 352 (5th Cir. 2001) ............................................................................................ 5

*Luxury Travel Source v. American Airlines, Inc.*,
    276 S.W.3d 154 (Tex. App.—Fort Worth 2008, no pet.) ........................................ 10

*MaxEn Capital, LLC v. Sutherland*,
    No. H-08-3590, 2009 WL 936895 (S.D. Tex. Apr. 3, 2009) ................................... 9

*McClintock v. Sch. Bd. E. Feliciana Parish*,
    299 F. App'x 363 (5th Cir. 2008) ........................................................................ 15

*Minka Lighting, Inc. v. Trans Globe Imports, Inc.*,
    No. 3:02-CV-2538, 2003 WL 21251684 (N.D. Tex. May 23, 2003) ....................... 18

*Moncrief Oil Intern. Inc. v. OAO Gazprom*,
    481 F.3d 309 (5th Cir. 2007) .............................................................................. 10

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    253 F.3d 865 (5th Cir. 2001) ................................................................................ 7

*Peppers Unlimited, Inc. v. Trujillo*,
    No. 4:18-CV-01001-P, 2019 WL 4689010 (N.D. Tex. Sept. 26, 2019) ................. 11

*Raz Imports, Inc. v. Luminara Worldwide, LLC*,
    No. 3:15-CV-02223-M, 2015 WL 6692107 (N.D. Tex. Nov. 3, 2015) ................... 17

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) ................................................................................ 6

*Sambrano v. United Airlines, Inc.*,
    No. 4:21-cv-1074-P, 2021 WL 5178829 (N.D. Tex. Nov. 8, 2021) .................... 4, 6

*Sealed Appellant 1 v. Sealed Appellee 1*,
    625 F. App'x 628 (5th Cir. 2015) ......................................................................... 7

*Silva v. Frankford Crossing Shopping Ctr.*,
    No. 3:12-CV-2046-O-BH, 2013 WL 1264155 (N.D. Tex. 2013) .......................... 11

*Southmark Corp. v. Life Investors, Inc.*,
    851 F.2d 763 (5th Cir. 1988) ................................................................................ 8

*Wylie v. Style Crest Enters., Inc.*,
    No. 3:13-CV-2394-L, 2013 WL 5729810 (N.D. Tex. Oct. 22, 2013) .................... 16

*Your Town Yellow Pages, L.L.C. v. Liberty Press, L.L.C.*,
    No. 3:09-CV-0605-D, 2009 WL 3645094 (N.D. Tex. Nov. 2, 2009) ...................... 9

*Zurich American Ins. Co. v. Tejas Concrete & Materials Inc.*,
    982 F. Supp. 2d 714 (W.D. Tex. 2013) ................................................................ 15

*Statutes*

28 U.S.C. § 1391(b)(2) ............................................................................................... 12, 15
28 U.S.C. ¶ 1404(a) ..................................................................................................... 16, 19
28 U.S.C § 1391(b) ............................................................................................................ 17

*Rules*

Fed. R. Civ. P. 45(c) ......................................................................................................... 17
Federal Rule of Civil Procedure 5(b)(2) ........................................................................... 21

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

TPG is a widely popular website and lifestyle media brand that for more than a decade has been providing advice to the traveling public about maximizing their travel experiences.  In fall 2021, The Points Guy App (the "<u>TPG App</u>") was created as a tool for smartphone and other device users to maximize their spending, help them earn rewards faster, and track progress toward their dream vacations.  The TPG App helps the public track in one place their progress across multiple hotel, airline, credit card, and other rewards programs.  It also enables them to make smart choices with their travel rewards by making clear which programs will offer the best deals for the specific travel they seek.  With respect to airline mileage programs like American's AAdvantage program, the TPG App helps to ensure that those customers can decode the often-confusing reward programs and realize the benefits of their previous purchases before they are taken away.

Using typical big-company bullying tactics, and in a desperate attempt to prevent the public from viewing their travel rewards and status on the TPG App, American Airlines filed this lawsuit on its home turf, which as detailed below, is an improper venue. American Airlines' lawsuit and actions not only stifle innovation and convenience for the public, but are particularly punitive. Indeed, American Airlines is the *only major U.S. airline* whose "loyalty" program miles expire. Unfortunately for its customers, American Airlines cancels its customers' valuable AAdvantage "loyalty rewards" simply because it can.

American Airlines seeks to chill the transparency that the TPG App has brought to consumers.  American Airlines would rather its valued and loyal customers remain uninformed and unaware of how best to utilize their AAdvantage points.  TPG believes that the traveling public has a right to be educated about their travel rewards despite American Airlines' efforts to keep their consumers in the dark.

Undoubtedly, this important dispute will need a resolution, but first, the Court must determine the proper parties and the proper forum for the dispute.

As to the first question, RV has no connection to this case.  It is not a citizen of Texas and does not operate any business in Texas related to the claims made in this case, including the TPG App.  American Airlines' only claims against RV stem from an inaccurate allegation that it is the "parent company" of TPG.  This is not true, and even if it was, American Airlines cannot establish that TPG's contacts with the forum should be imputed to RV.  RV does not maintain sufficient contacts, either through general or specific jurisdiction, to be amenable to this suit in this forum. RV should be dismissed at the outset.

As to the second issue—venue—Plaintiffs' allegations conflict with their own public statements on the relevant issues.  TPG, at whom American Airlines' allegations are targeted, is a citizen of Delaware and New York.  TPG developed, launched, and operates the TPG App in Austin, Texas.  The developers and operators of the TPG App are located in Austin.  The alleged conduct giving rise to the claims alleged by American Airlines did not occur in Fort Worth or otherwise in this District. American Airlines cannot manufacture venue based on a "forum selection clause" not applicable to its own claims.  And users of American Airlines' website apparently access servers located outside the District, according to its Technical Delivery Manager.  The case should be dismissed or transferred to a proper venue.

## FACTUAL BACKGROUND

Like every good innovation, the TPG App arose from a need.  Consumers who frequently fly with American Airlines can capitalize on their repeated travel by creating an AAdvantage account in order to earn rewards toward future travel.  In theory, this is good for both American Airlines and consumers, because it incentivizes consumers to be loyal customers and provides American Airlines with additional business.  But those rewards come with strings.  American

Airlines is the only major U.S. airline whose loyalty rewards expire if not used within a certain time.  Every year, consumers lose valuable rewards that could have been used to book their next vacation or a reunion with family.  TPG realized that consumers needed more information to help them navigate the often-confusing, unilaterally imposed terms set by American Airlines to govern their earned benefits.

TPG is well-known for assisting consumers in choosing the best credit cards, airline, flights, and lodging to fit individual consumers' particular financial situation.  Recognizing a new way to help consumers navigate these decisions, TPG created the TPG App.  The TPG App assists consumers in, among other things, managing their reward point systems for numerous entities in the financial services and travel industries.  App. 007 at ¶ 2.  The TPG App is intended to benefit consumers by helping them maximize rewards earned through their spending in loyalty programs, enabling consumers to view many different loyalty programs seamlessly within one application. *Id*.  The TPG App is a one-stop-shop for rewards programs.  One of the consumer loyalty accounts offered for TPG's services is AAdvantage, American Airlines' loyalty reward program.  *Id.* at ¶ 4.

TPG began developing the current TPG App in June 2019 and launched on September 27, 2021.  *Id.* at ¶ 3.  Since then, it has been downloaded over 140,000 times.  *Id*.  The TPG App currently has a 4.4-star rating on the Apple App Store, based on over 1,400 reviews to date.  *Id*.

After years of development and months after launch of the TPG App (both of which American Airlines was aware), American Airlines sent a cease-and-desist letter to TPG on January 7, 2022.  App. 008 at ¶ 4.  The letter vaguely alleged that the TPG App was violating American Airlines' "website terms and conditions."  Compl. at ¶ 95; *see also* App. 005 (Cease and Desist

3

letter).[1]   After receipt of this letter, to protect its right to provide services to American Airlines'

consumers, TPG filed suit in Delaware state court (where American Airlines is incorporated)

alleging claims of tortious interference and a declaratory judgment that seeks, among other things,

a declaration that TPG's operation of the TPG App is not prohibited by any law. App. 008 at ¶ 5.

Plaintiffs then filed this action almost a week later, alleging breaches of a contract in

connection with American Airlines' website terms of use, tortious interference with American

Airlines' contracts with its customers, trademark and copyright infringement, and other related

claims.  *See* Compl.  For the reasons set forth below, Red Ventures LLC should be dismissed on

personal jurisdiction grounds, and the entire case should either be dismissed for improper venue

or transferred to a district of proper venue.

ARGUMENT AND AUTHORITIES

## I.      Red Ventures LLC is not subject to personal jurisdiction in this forum.

"When a defendant challenges personal jurisdiction, the party seeking to invoke the power

of the court has the burden to prove that jurisdiction exists."  *See, e.g.*, *Sambrano v. United Airlines,*

*Inc.*, No. 4:21-cv-1074-P, 2021 WL 5178829, at *3 (N.D. Tex. Nov. 8, 2021) (Pittman, J). "The

Supreme Court has repeatedly affirmed that, as a matter of due process, courts may exercise

personal jurisdiction over a nonresident defendant only if '(1) that defendant has purposefully

availed himself of the benefits and protections of a forum state by establishing minimum contacts

with the forum state; and (2) the exercise of jurisdiction…does not offend traditional notions of

fair play and substantial justice.'"  *See, e.g.*, *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783,

786 (5th Cir. 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal

---

[1]   AA did not attach any such "terms and conditions" to its letter, direct TPG where to locate them, or inform TPG of the substance of the purported terms.  App. 008 at ¶ 4; *see also* App. 005.  Nowhere does the letter allege that TPG entered a "contract" with American Airlines.  App. 005.

quotations omitted)).  "'There are two types of minimum contacts: those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction.'" *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)).

### A.    RV is not subject to general jurisdiction in Texas.

General jurisdiction is a virtually insurmountable burden outside of a company's home. "'General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are continuous and systematic.'"  *Admar*, 18 F.4th at 786 (internal quotations and citation omitted).  A defendant must be "essentially at home in the forum state" to be subject to personal jurisdiction.  *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  In other words, the "paradigm forum" for general jurisdiction is "an individual's domicile, or, for corporations, an equivalent place, one in which the corporation is fairly regarded as at home."  *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S.Ct. 1773, 1775 (2017) (quotations and citation omitted).

Courts have applied this same analysis to limited liability companies, noting that "it has become 'incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.'"  *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336, 337 n.1 (5th Cir. 2020) (internal quotations omitted).  Indeed, it requires an "exceptional case" to find jurisdiction in an alternative to these two forums.  *Id.* at 338.

Plaintiffs appear to assert, albeit vaguely, that RV is subject to general jurisdiction.  Compl. at ¶ 15 ("[Defendants] systemically did and still do business here.").  The Court can dispense with this assertion quickly.  This is no such "exceptional" case.  *Frank*, 947 F.3d at 338.  RV is not a citizen of the state of Texas.   App. 002 at ¶ 2.  RV is a North Carolina limited liability company with its principal place of business in Fort Mill, South Carolina.  *Id*.  It has no members or managers

in Texas.  *Id.* at ¶ 3.  It does not have an office in Texas.  *Id.*  It is not registered with the Texas Secretary of State.  *Id.*  It owns no land or personal property in Texas.  *Id.*  It maintains no bank accounts in Texas.  *Id.*  It has no employees.  *Id.*  AA makes no allegations about any website that RV operates that is available to Texas residents, nor is any RV website used for commercial purposes.[2]  *Id.* at ¶ 4.

This Court recently and properly declined to exercise general jurisdiction based on "binding precedent" in another case involving a major U.S. airline United Airlines, even though "one of its seven hubs is in Houston, roughly a quarter of its daily flights take-off or land in Texas, and 16% of its employees work here."  *Sambrano*, 2021 WL 5178829, at *4.  Unquestionably, RV has *far less* contact with Texas than United Airlines.

In short, RV cannot be "fairly regarded as at home" in Texas, nor does it have "continuous and systematic" contacts with the state.  *Goodyear*, 564 U.S. at 924.  As a result, AA cannot meet its burden to establish general jurisdiction over RV.

## B.    RV is not subject to specific jurisdiction in this case.

"Specific jurisdiction exists when the nonresident defendant's contacts with the forum arise from, or are directly related to, the cause of action."  *See, e.g.*, *Admar*, 18 F.4th at 786 (quotations and citations omitted).  To determine whether specific jurisdiction exists, AA must show that (1) "[Defendants] ha[ve] minimum contacts with [Texas]—that [Defendants] purposefully directed its activities at [Texas] and availed [themselves] of the privilege of doing business here"; (2) "that

---

[2]    To the extent AA asserts that RV's operation of a website unrelated to the claims in this case can serve as a basis for general jurisdiction, such arguments have been rejected by the Fifth Circuit.  *See Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (The sliding scale deployed to analyze internet contacts "is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous, and systematic contacts required for a finding a general jurisdiction—in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas." (emphasis in original)); *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758, 373 n.3 (N.D. Tex. 2010) (Fitzwater, J.) (holding same).

their cause of action arises out of [Defendants'] [Texas] contacts"; and (3) if AA "satisf[ies] the first two steps, then [Defendants] must show that exercising jurisdiction would prove unfair or unreasonable." *Id.* (quotations and citation omitted).

### 1. AA cannot satisfy the elements of specific jurisdiction over RV.

RV is an improper party to this case. AA mistakenly alleges that RV is the parent company of TPG. Compl. at ¶ 13 ("Red Ventures is TPG's parent company."). Not so. RV is not the "parent company" of TPG; rather, RV falls under an entirely separate ownership chain than TPG and acts as a holding company in the marketing-services industry (not the travel industry) for entities that do not include TPG. App. 002 at ¶ 4. RV has no employees and acts independently of TPG; the two entities do not, for example, own stock in one another and maintain separate accounting records. App. 002–003 at ¶¶ 3, 5. RV was not involved in developing, designing, implementing, or otherwise working on any aspect of the TPG App. App. 008 at ¶ 6. Borrowing from AA's nomenclature, RV is more like TPG's second-cousin twice removed than a parent.

AA's remaining allegations center around conduct associated with the TPG App that, in conclusory fashion, indiscriminately lumps RV into the same conduct. *See generally* Compl. But in evaluating whether the plaintiffs have presented a *prima facie* case of personal jurisdiction, [the court] will not 'credit conclusory allegations, even if uncontroverted.'" *See, e.g.*, *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)).

RV is a stranger to the conduct alleged in this case. Despite its conclusory allegations, AA cannot make a *prima facie* case showing that RV purposefully availed itself of the benefits and protections of Texas with respect to the claims in this case, nor can it show that purported contacts of RV in Texas "arise from" or are "directly related to" the claims it alleges. *Admar*, 18 F.4th at 786. RV did not create or develop the TPG App, draft its code or content, maintain, operate, or

have any control over the TPG App.  App. 008 at ¶ 6.  RV has no employees and thus, no RV employees work on the TPG App or on behalf of TPG.  *Id*.; App. 002 at ¶ 3.  RV does not have an AAdvantage account.  App. 008 at ¶ 6.  RV does not utilize a publicly available website for commercial purposes.  App. 002 at ¶ 4.  Instead, RV acts as a holding company for entities in the marketing services, not the travel industry.  *Id*. At bottom, asserting jurisdiction over RV in this case, who is neither a parent of TPG nor involved with the TPG App, would be unfair and unreasonable because it has no connection to the claims asserted.  *Id*.

Even assuming *arguendo* that TPG is a subsidiary of RV (which it is not), the Fifth Circuit "generally does not impute contacts across parents and subsidiaries for jurisdictional purposes." *Frank*, 947 F.3d at 338, n.11 (citing *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773–74 (5th Cir. 1988) (when "a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent.")).  Indeed, "the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." *See Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 251 (5th Cir. 2019).  There is a "presumption of institutional independence," and to rebut it, AA must show "by clear and convincing evidence…something beyond the mere existence of a corporate relationship between a resident and nonresident entity."  *Id*.

Aside from the conclusory allegations and the inaccurate assertion that RV is a "parent company" of TPG, AA makes no such allegations, much less a *prima facie* case to support such a showing.  Nor does the relationship between RV and TPG create even a suspicion of an alter ego relationship between the two.[3]  Indeed, as noted, RV and TPG are under separate ownership chains

---

[3]   Factors the Court should consider in such an inquiry include "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3)

and are independent of one another.  App. 003 at ¶ 5.  Accordingly, the Court does not have specific jurisdiction over RV in this case.

> **2.     *The forum selection clause in AA's "Site Use" terms is inapplicable by its own terms.***

Perhaps aware of its deficient jurisdictional allegations, AA nonetheless asserts that "[t]he Court has jurisdiction over these claims pursuant to the agreement for access or use of American's website."  Compl. at ¶ 16.  It then quotes language of a "forum selection clause."  *Id.*  The Court can quickly dispense of AA's reliance on the forum selection clause for jurisdictional and venue purposes because it does not apply to **AA's claims** by its plain terms.

"In determining whether the forum selection clause applies, the court will assume not only that federal law governs the determination of whether an enforceable forum selection clause exists, but also that federal law controls whether [AA's] claims fall with the scope of the forum selection clause." *Demond v. Infiniti HR, LLC*, No. 3:17-CV-1322-D, 2018 WL 4145053, at *4 (N.D. Tex. Aug. 30, 2018) (Fitzwater, J.) (quoting *Your Town Yellow Pages, L.L.C. v. Liberty Press, L.L.C.*, No. 3:09-CV-0605-D, 2009 WL 3645094, *3 (N.D. Tex. Nov. 2, 2009)).  "The scope of a forum selection clause is limited solely to claims for breach of the contract that contains it." *Id.* (quoting *MaxEn Capital, LLC v. Sutherland*, No. H-08-3590, 2009 WL 936895, at *6 (S.D. Tex. Apr. 3, 2009)).  "Whether a forum selection clause encompasses other claims depends principally on how broadly the clause is worded." *Id.*

AA's own pleading acknowledges that the forum selection clause applies only to lawsuits brought by "**you**":

---

whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities." *Diece-Lisa*, 943 F.3d at 251 (quotations and citations omitted).

> Any lawsuit **brought by you** related to your access to, dealings with, or use of the Site must be brought in the state or federal courts of Tarrant County, Texas.

Compl. at ¶ 16 (emphasis added).  "You" refers to a user of AA's website, for example, the traveling public.  Accordingly, by its plain terms, the forum selection clause applies only to lawsuits brought *by a consumer against AA* related to their "access to, dealings with, or use of the Site"; the forum selection clause does not govern or direct where **AA** can or must file its claims. Nor does it direct where TPG must defend against claims brought by AA.

AA is no stranger to this argument.  Indeed, it has lost it at least once already.  The Fort Worth Court of Appeals rejected *this same argument* made by AA in *Luxury Travel*.  *Luxury Travel Source v. American Airlines, Inc.*, 276 S.W.3d 154, 166 (Tex. App.—Fort Worth 2008, no pet.). There, the court held that the Use Agreement did not apply to AA's claims and accordingly did not create a waiver of personal jurisdiction over the defendant:

> But the Use Agreement, even if admissible and binding upon Goyal, does not show that Goyal agreed to subject himself to the jurisdiction of the Texas courts. It clearly states that any suit brought by Goyal against American must be brought in the courts of Tarrant County, Texas. But it does not conversely say that Goyal agrees to subject himself to the jurisdiction of the Texas courts for purposes of a suit against him arising out of his AAdvantage® membership. Accordingly, we conclude and hold that the Use Agreement does not establish personal jurisdiction over Goyal.

*Id*.

Not only are **AA's claims** outside the scope of the clause, it is black letter law that AA's "unilateral activities cannot establish minimum contacts between the defendant and the forum state." *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).  Accordingly, AA's unilateral decision to pursue its claims in this forum cannot transform the inapplicable forum selection clause into a waiver of personal jurisdiction.  The fact that the claims fall outside the scope of the clause is the end of the analysis.  *Demond*, 2018 WL 4145053 at *4 (quoting *Aerus*

10

*LLC v. Pro Team, Inc.*, No. Civ.A. 304CV1985M, 2005 WL 1131093, at *7 (N.D. Tex. 2005) ("If

the substance of the . . . claims, stripped of their labels, does not fall within the scope of the forum

selection clause, the clause cannot apply.").  The forum selection clause is inapplicable to this case.

## II.    AA's suit should be dismissed for improper venue.

Notwithstanding the lack of personal jurisdiction as to RV, the entire case should be

dismissed (or, as set forth below, transferred) because the Northern District of Texas is an improper

venue.  "If venue is laid in the wrong division or district, the district court shall either dismiss or

transfer the case to any district or division in which the action could have been brought."  *See, e.g.*,

*Peppers Unlimited, Inc. v. Trujillo*, No. 4:18-CV-01001-P, 2019 WL 4689010, at *2 (N.D. Tex.

Sept. 26, 2019) (Pittman, J.).  Once a defendant challenges venue, the burden is on the plaintiff to

sustain it.  *Silva v. Frankford Crossing Shopping Ctr.*, No. 3:12-CV-2046-O-BH, 2013 WL

1264155, at *3 (N.D. Tex. 2013), *rep. & rec. adopted*, No. 3:12-CV-2046-O, 2013 WL 1281571

(N.D. Tex. Mar. 28, 2013) (O'Connor, J) ("Although the Fifth Circuit has not ruled on which party

bears the burden on a Rule 12(b)(3) motion, most district courts within the circuit have imposed

the burden of proving that venue is proper on the plaintiff once a defendant has objected to the

plaintiff's chosen forum.").

### A.    Venue is improper because a substantial part of the events at issue occurred outside this District, including access of AA's website.

AA seeks to lay venue solely based on the allegation that "a substantial part of the

events…giving rise to the claim occurred" in this District.  Compl. at ¶ 17.  But even AA must

acknowledge that the alleged conduct giving rise to its claims occurred outside this District.  The

TPG App was developed in Austin, Texas.  App. 008 at ¶ 5.  The TPG App was launched from

Austin, Texas.  *Id*.  The TPG App is operated in Austin, Texas.  *Id*.  The majority of the developers

and operators of the TPG App are primarily located in Austin, Texas.  *Id*.  Up to the time AA filed

suit, no developers or operators of the TPG App resided in this District.  *Id.*  The servers supporting

the TPG App are not located in this District.  *Id.*  Thus, all or a substantial part of the events giving

rise to AA's alleged claims occurred in the Western District of Texas.  *See* 28 U.S.C. § 1391(b)(2).

At best, the one "event" alleged to support its venue allegations is that AA's servers are

supposedly located in Fort Worth.  Compl. at ¶ 17.  As set out below, that conclusory allegation is

contradicted by AA's public comments about its recent transition to a cloud-based infrastructure

and other publicly available information.[4]

According to publicly available information, including statements by AA's own

information technology executive, AA has recently moved its entire "sales reservation system"

from its onsite (Fort Worth-based) servers to the Cloud, hosted by third-party internet service and

security provider, Oracle.  In a March 23, 2021 press release, it was touted that AA was recently

able to "successfully move [AA's] business-critical sales reservation system safely to Oracle

Cloud Infrastructure (OCI)."  App. 011–012, Dsouza, Rebecca, *American Airlines' Journey to

Oracle Cloud*, March 23, 2021, *available at* https://blogs.oracle.com/siebelcrm/post/american-

airlines-journey-to-oracle-cloud.  This press release discusses a "Virtual Summit" in which

Oracle's Sachin Shah, Senior Manager of Digital Transformation, and AA's Vijay Krishnaswamy,

Technical Delivery Manager for AA's Loyalty Platform, "walked through AA's entire journey to

OCI."  *Id.*  Links to both the powerpoint deck and the oral presentation by Messrs. Shah and

Krishnaswamy are provided near the bottom of the press release.  *Id.*

---

[4]   As an initial matter, AA does not assert that its servers qualify as sufficient "property" to satisfy the
second part of Section 1391(b)(2).  *Compare* Compl. at ¶ 17 ("A substantial part of the events . . . giving
rise to the claim occurred" here), *with* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in—a judicial
district in which a substantial part of the events or omissions giving rise to the claim occurred, *or a
substantial part of property that is the subject of the action is situated*." (emphasis added)).

Material to the issues here, Mr. Krishnaswamy makes clear during his presentation that AA customers no longer access AA's website from the internet by accessing local servers in Fort Worth.  *Id*.  Rather, with the move to the Oracle Cloud, the AA website now resides on Oracle Cloud Infrastructure ("OCI"), which is hosted in either Phoenix, Arizona or Ashburn, Virginia.[5]

But accessing the www.aa.com website involves an additional step, and one that does not flow through Fort Worth.  According to AA's Mr. Krishnaswamy, when an internet user accesses AA's site, it is first directed to a content distribution network provider called Akamai.  After performing various security functions, Akamai then directs the request to one of two OCI data centers located in either Phoenix, Arizona or Ashburn, Virginia to obtain the content for www.aa.com.  This navigation is demonstrated on Mr. Krishnaswany's flowchart at slide 12:



---

5    *See* App. 026, *American Airlines' Transformation to Oracle Cloud Infrastructure*, slide deck at 12, *available at:*

*https://www.oracle.com/oce/dc/assets/CONT2656B47B389B4C38978FBFBCBBE56B63/native/american-airlines-transformation-to-oracle-cloud-infrastructure_8.pdf?elqTrackId=81622c39f0d845f2acd8cb8294172e7e&elqaid=97409&elqat=2.*





Publicly available IP address geolocators confirm this cloud-based structure for accessing

www.aa.com. For example, according to IP geolocation tool "IP Location" (*available at*

https://www.iplocation.net/ip-lookup), a user seeking to access www.aa.com is directed to Akamai's servers in San Jose, California. App. 052–057. Accordingly, an internet user trying to access www.aa.com would be directed to Akamai's San Jose servers, then to either Oracle's cloud-based servers hosting AA's site in either Phoenix or Ashburn.

"Although the chosen venue does not have to be the place where the most relevant events took place, the selected district's contacts must still be substantial." *McClintock v. Sch. Bd. E. Feliciana Parish*, 299 F. App'x 363, 365 (5th Cir. 2008). "Substantiality is intended to preserve the element of fairness so that a defendant is not hauled into a remote district having no real relationship to the dispute." *Cont'l W. Ins. Co. v. Liepke Invs., Ltd.*, No. 3:10-CV-1701-P, 2011 WL 13216993, at *2 (N.D. Tex. Mar. 8, 2011) (internal quotations omitted). "Substantiality" under Section 1391(b)(2) "is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not simply adding up the number of contacts." *Zurich American Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013).

The only event alleged to have occurred in Fort Worth is that AA's servers were supposedly located in the District. Compl. at ¶ 17. But as described above, that allegation appears to be an overly simplified and flawed description of how users, including TPG, actually access and use the AA website. If Mr. Krishnaswamy is to be believed, TPG's access of AA's website does not occur in the District, but instead is transmitted through Akamai's servers and to the Oracle OCI servers in Phoenix or Ashburn, making venue here improper.

Accordingly, Defendants respectfully request that the Court dismiss this case for improper venue. Alternatively, TPG requests that the Court permit limited discovery on issues relevant to the venue question under 28 U.S.C. §1391(b)(2).

III.    **Alternatively, the Court should transfer this case to the Western District of Texas or to the District of Delaware.[6]**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or division to which all parties have consented." 28 U.S.C. ¶ 1404(a). Transfer is discretionary, and the plaintiff's choice of venue is given "some deference, which dictates that the moving party must 'demonstrate that the transferee venue is clearly more convenient.'" *Wylie v. Style Crest Enters., Inc.*, No. 3:13-CV-2394-L, 2013 WL 5729810, at *2 (N.D. Tex. Oct. 22, 2013) (cleaned up) (quoting *In re Volkswagen of Am.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*")).

A.    **There are two alternative venues where this case could have been brought.**

"The first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *See, e.g.*, *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). After a potential transferee court is established, the court considers several private and public interest factors. *Volkswagen II*, 545 F.3d at 315. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance of willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id*. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

---

[6]    Defendant Red Ventures LLC asserts this Motion to Transfer Venue subject to its Motion to Dismiss for lack of personal jurisdiction set forth above. Defendants assert this Motion to Transfer Venue subject to their Motion to Dismiss for Improper Venue set forth above.

*Id*.  Here, this case could have been brought in at least two other venues—the Western District of Texas and the District of Delaware.  TPG would support transfer to either court.

### 1.      *Transfer is proper to the Western District of Texas.*

Venue is proper in the Western District of Texas, Austin Division.  As noted above, the alleged events underlying AA's alleged claims substantially occurred in Austin, Texas, located in the Western District of Texas.  That is where TPG developed the TPG App, launched the TPG App, and operates and maintains the TPG App.  App. 008 at ¶ 5.  These venue facts would support venue under 28 U.S.C § 1391(b).

### a.      The private interest factors support transfer.

The private interest factors support transfer to the Western District of Texas.  *First*, TPG's business records relevant to the TPG App are located in Austin, Texas.  *Id*.  In cases involving alleged misappropriation, like patents for example, courts have acknowledged that "'the bulk of the relevant evidence usually comes from accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.'"  *Camatic Proprietary Ltd. v. Irwin Seating Co.*, No. 3:16-CV-0795-M, 2017 WL 2362029, at *3 (N.D. Tex. May 31, 2017) (Lynn, C.J.) (quoting *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009)).  Indeed, "'the preferred forum is the center of gravity of the accused activity,' including the accused product's 'testing, research, and production as well as the place where the marketing and sales decisions occurred.'"  *Id.* (quoting *Raz Imports, Inc. v. Luminara Worldwide, LLC*, No. 3:15-CV-02223-M, 2015 WL 6692107, at *5 (N.D. Tex. Nov. 3, 2015)).  The center of gravity of the accused activity in this case is in the Western District of Texas.  This factor favors transfer.

*Second*, Austin, Texas is outside the subpoena range of this Court.  *See* FED. R. CIV. P. 45(c) (a person may be compelled to attend or produce documents within 100 miles of where "the

person resides, is employed, or regularly transacts business in person."[7]   "Convenience of witnesses is the most important factor in considering transfer, and the 'convenience of the non-party witnesses is accorded the greatest weight.'"  *Irwin*, 2017 WL 2362029 at * 4 (quoting *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. 3:02-CV-2538, 2003 WL 21251684, at *2 (N.D. Tex. May 23, 2003)).  Many relevant witnesses are located in the Western District of Texas.   The creators and developers of the TPG App, including former employees who may have relevant knowledge, are located in the Western District of Texas.  App. 008 at ¶ 5.  Those that currently operate the TPG App are primarily located in the Western District of Texas.  *Id*.  This factor weighs in favor of transfer.

*Third*, for the same reasons as above, the cost of attendance for willing witnesses is less in the Western District of Texas than this District.  Because the majority of witnesses are located there (and outside the subpoena range of this Court), it will necessarily require significant activity in the Western District of Texas to depose these witnesses and obtain documents.  This factor weighs in favor of transfer.

*Fourth*, the attendant problems and expenses that arise from documents and witnesses being located outside the forum and outside subpoena power supports transfer.  Reaching these witnesses and documents requires additional time and expense that would not be incurred if the case was pending in the Western District of Texas.  This factor favors transfer.

### b.        The public interest factors support transfer.

*First*, the Western District of Texas and this District have comparable court and timing statistics.  Cases appear to reach trial slightly quicker in the Western District of Texas than the

---

[7]   Defendants request that the Court take judicial notice that the federal courthouse is Austin, Texas is approximately 192 miles away from the federal courthouse in Fort Worth, Texas.  *See also* App. 060 (Google map image showing distance between courthouses).

Northern District.  *Compare* App. at 084 (579 days to trial in the Western District) *with* App. 090 (651 days to trial in the Northern District).  This factor weighs slightly in favor of transfer.

*Second*, the "local interest in having localized interests decided at home" weighs in favor of transfer in this case.  Indeed, "[t]his factor generally favors the venue where the acts giving rise to the lawsuit occurred."  *Irwin*, 2017 WL 2362029 at *6 (internal quotations and citations omitted).  As discussed, the relevant conduct alleged by AA occurred in the Western District of Texas.  TPG does not have an office in this District, it developed and launched the TPG App from the Western District of Texas, and operates the TPG App principally from the Western District of Texas.  App. 008 at ¶ 5.

The third and fourth public interest factors are of no consequence.  Both this District and the Western District of Texas are equally capable of applying both federal, Texas state law, or any other applicable law to the alleged claims in this dispute, and a conflict of laws analysis is not anticipated at this time to be necessary.

### 2. *Transfer is proper to the District of Delaware.*

Venue would also be proper in the District of Delaware.   A transfer to Delaware would represent a compromise between the parties.  *See* 28 U.S.C. § 1404(a) (noting the Court may transfer to "any district or division to which all parties have consented.").  Both AA and TPG are incorporated in Delaware.  *See* Compl. at ¶ 10 ("Plaintiff American Airlines, Inc. is a Delaware corporation. . ."); *id.* at ¶ 13 ("Defendant the Points Guy LLC ("TPG") is a Delaware limited liability company. . .").  In addition, there is pending litigation regarding the same transaction between these parties in Delaware state court.  App. 008 at ¶ 5.  In order to conserve resources, in the interest of judicial efficiency and to avoid potentially inconsistent rulings, TPG would agree to dismiss its lawsuit in Delaware state court and assert its claims in a Delaware federal district court along with AA's claims made in this case.

19

## CONCLUSION

WHEREFORE Defendants request that RV be dismissed from this case because it is not subject to personal jurisdiction in this forum.  Moreover, and notwithstanding the lack of personal jurisdiction over RV, Defendants request that the entire case be dismissed for improper venue. Alternatively, the Defendants request that the Court transfer this case to the Western District of Texas or the District of Delaware.  Defendants respectfully request any other relief to which the Court deems appropriate at law or in equity.

Dated:  April 1, 2022

Respectfully submitted,

**BECK REDDEN LLP**

*/s/ Alex B. Roberts*
David J. Beck (State Bar No. 00000070)
Alex B. Roberts (State Bar No. 24056216)
Jake McClellan (State Bar No. 24109525)
1221 McKinney Street, Suite 4500
Houston, Texas
Telephone: (713) 951-3700
Facsimile: (713) 951-3720
dbeck@beckredden.com
aroberts@beckredden.com
jmcclellan@beckredden.com

- and -

**WICK PHILLIPS GOULD & MARTIN, LLP**

David J. Drez III (State Bar No. 24007127)
Colin P. Benton (State Bar No. 24095523)
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789
david.drez@wickphillips.com
colin.benton@wickphillips.com

**ATTORNEYS FOR DEFENDANTS RED VENTURES LLC AND THE POINTS GUY LLC**

20

## <u>CERTIFICATE OF SERVICE</u>

On April 1, 2022, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Colin P. Benton*
Colin P. Benton