IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., and AADVANTAGE LOYALTY IP LTD. | § § § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 4:22-cv-00044-P |
| | § | |
| RED VENTURES LLC; THE POINTS GUY LLC, | § § § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS AMERICAN AIRLINES, INC. AND AADVANTAGE LOYALTY IP LTD.'S RESPONSE TO DEFENDANTS RED VENTURES, LLC AND THE POINTS GUY LLC'S RULE 12(B)(6) MOTION TO DISMISS**

Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
J. Austin Franklin
austin.franklin@kellyhart.com
State Bar No. 24057853
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

Howard S. Hogan
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 887-3640
(*pro hac vice*)

*ATTORNEYS FOR PLAINTIFFS AMERICAN AIRLINES, INC. AND AADVANTAGE LOYALTY IP LTD.*

105380339.10

TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

FACTS ................................................................................................................ 2

LEGAL STANDARD ............................................................................................. 5

ARGUMENT......................................................................................................... 6

      I.      American's Unfair Competition Claim Is Distinct from Its Copyright
            Claim........................................................................................................ 6

      II.     American Has Pled Enough Harm to Sustain Its CFAA Claim. ........................... 8

      III.    American's Claim Under the Texas Harmful Access by Computer Act Is
            Also Well-Supported. .......................................................................... 11

      IV.    American Appropriately States a Claim for Trespass........................................... 12

PRAYER FOR RELIEF............................................................................................. 14

105380339.10

**TABLE OF AUTHORITIES**

CASES

*Althouse v. Cockrell*,
2002 WL 32372815 (N.D. Tex. Sept. 12, 2002)....................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................6

*Carson v. Dynegy, Inc.*,
344 F.3d 446 (5th Cir. 2003) .................................................................................................6

*DHI Grp., Inc. v. Kent*,
2017 WL 4837730 (S.D. Tex. Oct. 26, 2017)..................................................................12, 13

*Frisco Med. Ctr., L.L.P. v. Bledsoe*,
147 F. Supp. 3d 646 (E.D. Tex. 2015)..................................................................................10

*GlobeRanger Corp. v. Software AG*,
691 F.3d 702 (5th Cir. 2012) .............................................................................................6, 7

*H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs., LLC*,
2009 WL 1766095 (N.D. Tex. June 23, 2009) .....................................................................13

*Insurance Safety Consultants LLC v. Nugent*,
2017 WL 735460 (N.D. Tex. Feb. 24, 2017)........................................................................11

*Johnson v. City of Shelby*,
574 U.S. 10 (2014)..................................................................................................................5

*Motion Med. Techs., L.L.C. v. Thermotek, Inc.*,
875 F.3d 765 (5th Cir. 2017) .................................................................................................7

*Republic Techs. (NA), LLC v. Rangila Enters., Inc.*,
2021 WL 2213797 (N.D. Tex. Mar. 17, 2021) ......................................................................6

*Seidner v. Kimberly-Clark Corp.*,
2022 WL 865890 (N.D. Tex. Mar. 23, 2022) .........................................................................5

*Settlement Cap. Corp. v. BHG Structured Settlements, Inc.*,
319 F. Supp. 2d 729 (N.D. Tex. 2004) ...................................................................................8

*In re Simons Broad., LP*,
2013 WL 9542015 (W.D. Tex. Nov. 19, 2013)....................................................................13

*Southwest Airlines Co. v. Harris*,
2007 WL 3285616 (N.D. Tex. Nov. 2, 2007)........................................................................10

105380339.10

*Sw. Airlines Co. v. Farechase, Inc.*,
   2003 WL 23890293 (N.D. Tex. Oct. 31, 2003) ........................................................................9

*Sw. Airlines Co. v. Farechase, Inc.*,
   318 F. Supp. 2d 435 (N.D. Tex. 2004) ............................................................9, 10, 11, 12, 13

*Sw. Airlines Co. v. Roundpipe, LLC*,
   375 F. Supp. 3d 687 (N.D. Tex. 2019) ...........................................................................10, 11

*Talon Transaction Technologies, Inc. v. StoneEagle Services, Inc.*,
   2013 WL 12172926 (N.D. Tex. Aug. 15, 2013)................................................................10, 12

*Taylor Publ'g Co. v. Jostens Inc.*,
   216 F.3d 465 (5th Cir. 2000) ....................................................................................................8

*White v. U.S. Corr., L.L.C.*,
   996 F.3d 302 (5th Cir. 2021) ....................................................................................................5

*Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*,
   341 F. Supp. 2d 639 (N.D. Tex. 2004) .....................................................................................8

**STATUTES**

18 U.S.C. § 1030(a)(5)(B)(i), (e)(11) .............................................................................................9

18 U.S.C. § 1030(g) .........................................................................................................................9

105380339.10

PRELIMINARY STATEMENT

Plaintiffs American Airlines, Inc. and AAdvantage Loyalty IP Ltd. (collectively, "American") filed the 55-page, 196-paragraph complaint in this action (the "Complaint") to prevent Defendants Red Ventures LLC ("RV") and The Points Guy ("TPG") (collectively, "Defendants") from duping millions of consumers into participating (unwittingly) in a scheme to monetize those consumers' data, steal American's valuable intellectual property rights, usurp American's relationship with its customers, and enrich Defendants at the expense of consumer data security. Tellingly, Defendants' Rule 12(b)(6) motion to dismiss addresses only four of the twelve claims asserted against them, in an obvious attempt to obfuscate their potential liability. Even a cursory comparison of Defendants' motion and the Complaint, however, will show that Defendants have systematically mischaracterized and intentionally misconstrued American's well-pled allegations. American respectfully requests that the Court summarily reject these tactics.

*First*, Defendants try to escape American's unfair competition by misappropriation claim on the ground that it is preempted by the Copyright Act. But even the most cursory glance at the Complaint makes clear that American's misappropriation claim has absolutely nothing to do with copyright. To the contrary, American's allegations specifically state that the misappropriation claim—as distinguished from the separately pled copyright claim—is not based on any work of authorship, but based on Defendants' unlawful misappropriation of the relationships that American has carefully built with its customers over decades, and the systems that American has put in place to manage those customer relationships.

*Second*, Defendants similarly attack American's Computer Fraud and Abuse Act claim by ignoring the concrete allegations of American's Complaint. Contrary to Defendants' contention that American has not "plead cognizable damages," American specifically alleged that it has

suffered damages resulting from Defendants' unauthorized access, including that such access "increases the burdens and costs to run and maintain" American's systems and causes "harm to its content and programs, and expenses from being forced to investigate the unauthorized access and abuse of its computers and servers."  Compl. ¶¶ 173, 175.

*Third*, Defendants likewise attempt to escape liability under the Texas Harmful Access by Computer Act on the mistaken theory that American "fails to plead cognizable damages."  But again, the Complaint plainly specifies that "American has been harmed by [Defendants'] conduct in at least the following ways: (a) costs associated with American's response to defendants' unlawful access and collection of data; and (b) diminution in value of its product as a result of consumer confusion."  *Id.* ¶ 181.

*Fourth*, Defendants' contention that American cannot state a claim for trespass fails for similar reasons.  Once again, Defendants conveniently disregard the Complaint's robust allegations, which detail the deprivations that American has suffered because of Defendants' continuous and unauthorized access of American's proprietary systems.  Worse, Defendants ask the Court to ignore clear precedent from this District that has upheld claims supported by nearly identical allegations to those pleaded in American's Complaint.

Accordingly, and as further described below, this Court should summarily deny Defendants' motion to dismiss.

## FACTS

The facts of this case are described in greater detail in American's contemporaneously filed response to Defendants' Rule 12(b)(2) motion to dismiss and Rule 12(b)(3) motion to dismiss or transfer venue, and are incorporated here by reference.  In brief, both motions invoke American's fundamental allegation that it launched and built a revolutionary rewards program called

AAdvantage® over the course of four decades and AA.com—a first-in-class online airline rewards portal. Compl. ¶ 2.

AA.com is a proprietary website consisting of a privately owned computer system, with supporting servers, databases, routers, networks, bandwidth, computer capacity, firewalls, and other equipment. *Id.* ¶ 26. On that website, AAdvantage® members sign up, agree to American's terms and conditions, and—in exchange for use of the platform and its services—provide information to American that American in turn uses to enhance each member's experiences and its services. *Id.* ¶¶ 2, 24. American has invested substantial time and millions of dollars in developing, marketing, and maintaining its proprietary computer system and website, the proprietary fares contained in it, its AAdvantage® functionality, and the other sophisticated functions that it performs, all for the purpose of serving its customers. *Id.* ¶ 27. It is critical to American and its business that AA.com and its AAdvantage® program remain secure resources that customers can trust with their private travel information, and American authorizes only certain companies to access its proprietary information, including AAdvantage® account information. *Id.* ¶¶ 25, 35.

Defendants are not one of those authorized companies. *Id.* ¶ 76. Indeed, at no point have they received any authorization from American whatsoever. *Id.* ¶ 75. Nevertheless, over the past approximately nine months, Defendants have developed and operated a platform that uses American's trademarks, reputation, and other intellectual property in furtherance of a scheme to entice consumers to surrender their AAdvantage® numbers and passwords in violation of American's Use Agreement, and then accesses their accounts through AA.com, downloads their information, and creates an unauthorized parallel repository of this data on Defendants' servers to commandeer American's relationship with its customers. *Id.* ¶¶ 50, 73–75. This platform is used

PLAINTIFFS AMERICAN AIRLINES, INC. AND AADVANTAGE LOYALTY IP LTD.'S RESPONSE TO
DEFENDANTS RED VENTURES, LLC AND THE POINTS GUY LLC'S RULE 12(B)(6) MOTION TO DISMISS

PAGE 3

in connection with an app launched by Defendants in September 2021 ("TPG App"), which purports to help users view and maximize their travel points by providing a platform to "sync all of a user's loyalty programs," *id.* ¶ 54 (citation and alterations omitted), including AAdvantage®, *id.* ¶ 56. Defendants accomplish this in part by accessing AA.com to extract proprietary data related to AAdvantage®, including AAdvantage® numbers or usernames and AAdvantage® passwords. *Id.* ¶¶ 50, 73. Defendants' access of AA.com and AAdvantage® systems and account data is unauthorized, as Defendants are well aware because American specifically declined Defendants' invitation to participate in the TPG App. *Id.* ¶¶ 87, 89.

American's Complaint alleges how Defendants' knowing and unauthorized access of AA.com and AAdvantage® systems is causing harm to American. Among other things, the Complaint states:

- "American has invested substantial time and millions of dollars in developing, marketing, and maintaining AA.com and its AAdvantage® program," *id.* ¶ 24, "and millions of dollars in developing, marketing, and maintaining its proprietary computer system and website, the proprietary fares contained in it, its AAdvantage® functionality, and the other sophisticated functions that it performs, all for the purpose of serving its customers," *id.* ¶ 27; *see also id.* ¶ 116.

- "By deploying American's intellectual property for its own gain to access the proprietary data and information that, under American's terms and conditions it owns and controls, TPG is essentially free-riding on decades of investment by American, using American's own intellectual property, brand, and goodwill to supplant American's customer relationships," *id.* ¶ 6.

- "Defendants are causing . . . harm to American's business reputation and goodwill," *id.* ¶ 79.

  "American did and will suffer damage by reason of [Defendants'] violations [of American's computer systems], including harm to its content and programs, and expenses from being forced to investigate the unauthorized access and abuse of its computers and servers . . . in an amount . . . over $5000 aggregated over a one-year period," *id.* ¶ 175.

- "American has been harmed by this conduct in at least the following ways: (a) costs associated with American's response to defendants' unlawful access and collection of data; and (b) diminution in value of its product as a result of consumer confusion," *id.* ¶ 181.

In the face of their flagrant violations of American's rights, on January 11, 2022, Defendants filed a preemptive declaratory judgment action in Delaware Superior Court (the "Delaware Action") seeking to frame American's claims as straw men that could be easily picked off.  American, though, promptly filed its own action in this Court, asserting all 12 of its affirmative counts in its own words: (1) breach of the AA.com Use Agreement; (2) tortious interference with contract; (3) unfair competition by misappropriation; (4) trespass; (5) trademark infringement under the Lanham Act; (6) dilution under the Lanham Act; (7) dilution under Texas trademark law; (8) false designation of origin and unfair competition under the Lanham Act; (9) copyright infringement; (10) violation of the Computer Fraud and Abuse Act (the "CFAA"); (11) violation of the Texas Harmful Access by Computer Act (the "THACA"); and (12) unjust enrichment.

Defendants subsequently filed this Rule 12(b)(6) motion to dismiss, directed only to counts three (unfair competition by misappropriation), four (trespass), ten (violation of the CFAA), and eleven (violation of the THACA).  For the reasons described below, Defendants' motion should be denied.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must only allege "enough facts to state a claim to relief that is plausible on its face." *Seidner v. Kimberly-Clark Corp.*, 2022 WL 865890, at *1 (N.D. Tex. Mar. 23, 2022) (citation omitted).  In so doing, the plaintiff "need only . . . stat[e] 'simply, concisely, and directly events' that the plaintiff contends entitle him or her to relief." *Pharma Funding LLC v. Verde Pharmacy & Med. Supply LLC*, 2022 WL 837949, at *2 (N.D. Tex. Jan. 28, 2022) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). The court must "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corr., L.L.C.*, 996 F.3d 302,

306–07 (5th Cir. 2021); *see also Republic Techs. (NA), LLC v. Rangila Enters., Inc.*, 2021 WL 2213797, at *3 (N.D. Tex. Mar. 17, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

**ARGUMENT**

**I.      American's Unfair Competition Claim Is Distinct from Its Copyright Claim.**

Defendants urge the court to dismiss American's unfair competition claim on the basis that it is purportedly "pre-empted by the Federal Copyright Act." Mot. at 2. However, for a state-law claim to be preempted by the Copyright Act, "both prongs of a two-factor test must be satisfied. First, the claim is examined to determine whether it falls 'within the subject matter of copyright' as defined by 17 U.S.C. § 102." *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012) (ellipses omitted) (quoting *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003)). And second, "the cause of action is examined to determine if it protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Id.* (quoting *Carson*, 344 F.3d at 456). If the state law claim requires "one or more qualitatively different elements," then the motion must fail. *Centrix Fin. LLC v. Cap. Lending Strategies, LLC*, 2004 WL 1932872, at *1 (N.D. Tex. Aug. 31, 2004) (citation omitted).

Defendants' motion cannot possibly meet either prong of this test because the motion blatantly mischaracterizes the claim as alleged. Contrary to Defendants' arguments, American's unfair competition claim has nothing to do with American's entirely separate copyright claims.

The only copyright at issue in American's Complaint is its "Flight Symbol"  that is registered with the U.S. Copyright Act as Reg. No. VA0002130520 / 2016-06-03. As the Complaint makes clear, American is unhappy with Defendants' extensive unauthorized use of that image. *See* Compl. ¶¶ 56–70. But that conduct is covered only by Count IX of American's Complaint, which speaks to the infringement of that flight symbol. *Id.* ¶¶ 163–66.

The unfair competition claim, in contrast, speaks to Defendants' misappropriation of the "time, labor, skill, and millions of dollars in developing, marketing, and maintaining AA.com and its AAdvantage® program" as a whole, as well as its systems that facilitate American's communications with its customers about their own proprietary customer account information and American's rewards pricing, status benefits, and fare information. *Id.* ¶¶ 116–17. The gravamen of the claim is that Defendants and the TPG App misappropriate access to these systems to usurp American's relationships with its customers and the opportunity to continue to service those customers directly—an infrastructure that American has invested millions of dollars to develop. *Id.* ¶¶ 24, 27, 116. In short, the unfair competition claim has ***nothing to do*** with a work of authorship in fixed form that could be covered by a valid copyright.

At most, Defendants create a straw man by pointing out that American is alleging misappropriation of "proprietary information," as if American's actual pleadings could be recharacterized into software code or an arrangement and selection of data that might merit copyright protection. Mot. at 4. The case that Defendants rely on, however, is inapposite, because American has ***not*** alleged a misappropriation of "manuals" or other "billing information" that could be considered an "original work[] of authorship fixed in a[] tangible medium of expression." *See Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 773–74 (5th Cir. 2017). To the contrary, courts routinely recognize that it is improper to find a claim preempted by ignoring the actual allegations of the Complaint. *See, e.g.*, *GlobeRanger Corp.*, 691 F.3d at 708 (in case involving defendant's unauthorized access of plaintiff's software, plaintiff's unauthorized competition claim was not preempted because plaintiff's complaint "contain[ed] plausible allegations that extend[ed] beyond software" such as that defendant's unauthorized use enabled "the copying of its business practices").

It is important to remember that the claim of unfair competition "under Texas law is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Settlement Cap. Corp. v. BHG Structured Settlements, Inc.*, 319 F. Supp. 2d 729, 734 (N.D. Tex. 2004) (quoting *Taylor Publ'g Co. v. Jostens Inc.*, 216 F.3d 465, 486 (5th Cir. 2000)); *see also Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*, 341 F. Supp. 2d 639, 644–45 (N.D. Tex. 2004) (Texas's unfair competition law is "substantially similar in approach" to California's, which is "describ[ed] . . . as 'sweeping' and 'embracing' anything that can properly be called a business practice and which is at the same time forbidden by law" (citation omitted)).  As a result, Defendants cannot, at this stage of the case, rewrite American's unfair competition claim so it is only based on Defendants' theft of American's "proprietary information."  The Complaint goes far beyond Defendants' attempt to shoehorn the claim into a copyright analog.

Because Defendants have mischaracterized American's unfair competition claim, their motion should be denied.

## II.     American Has Pled Enough Harm to Sustain Its CFAA Claim.

Defendants' contention that American's CFAA claim should be dismissed because it "fail[s] to plead cognizable damages," Mot. at 2, is similarly unmoored from the allegations of the Complaint.  According to Defendants, "[t]he Computer Fraud & Abuse Act contemplates specific loss like compromised data integrity or interruption in service," *id.* but "Plaintiffs fail to plead that any data was impaired, that its integrity was compromised, or that any data was rendered unavailable from Plaintiffs' computers," *id.* at 6.

As with Defendants' preemption argument, they again blatantly misread and cherry-pick from American's allegations to fabricate an argument where no such good faith argument exists. Although Defendants correctly note that American alleges that "Defendants intentionally accessed

and continue to access American's protected computers or servers without authorization," *id.* (citing Compl. ¶ 171) (italics omitted), they completely ignore that American also specifically alleged that Defendants' access "increases the burdens and costs to run and maintain such systems," Compl. ¶ 173, and causes "harm to its content and programs, and expenses from being forced to investigate the unauthorized access and abuse of its computers and servers," *id.* ¶ 175.

These are precisely the sorts of harms that the CFAA was designed to prevent. The CFAA "provides for a civil action by anyone who has suffered 'damage or loss by reason of a violation'" of the statute. *Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 438 (N.D. Tex. 2004) (quoting 18 U.S.C. § 1030(g)). "Loss" is defined to include not only data impairment, but also "*any* reasonable cost to any victim, including the cost of responding to an offense . . . . aggregating at least $5,000 in value." *Id.* at 439 (emphasis added) (quoting 18 U.S.C. § 1030(a)(5)(B)(i), (e)(11)). More pointedly, as courts in this Circuit have held time and again, this definition encompasses the costs and damage associated with a defendant's unauthorized use of the plaintiff's computer systems.

Accordingly, American's Complaint is directly in line with this Court's decision in *Southwest Airlines Co. v. Farechase, Inc.*, where another airline brought a CFAA claim against a software company that had used an automated scraping device to improperly access the airline's data. 318 F. Supp. 2d at 435. The complaint in that case lines up with the allegations here. *Compare* Compl., *Sw. Airlines Co. v. Farechase, Inc.*, 2003 WL 23890293 (N.D. Tex. Oct. 31, 2003) ("[D]efendants intentionally access[ed] a protected computer without authorization, and as a result recklessly cause[d] damage" to the airline "during the past year of at least $5,000"), *with* Compl. ¶ 173 ("Defendants' act of accessing American's protected computers and servers without authorization . . . necessarily increases the burdens and costs to run and maintain such systems."),

*and id.* ¶ 175 ("American did and will suffer damage by reason of these violations, including harm to its content and programs, and expenses from being forced to investigate the unauthorized access and abuse of its computers and servers" in an amount "over $5000 aggregated over a one-year period."). Based on these virtually identical allegations, the court in *Farechase* denied the software company's motion to dismiss and held that "[the airline] has alleged sufficient facts to state a cause of action pursuant to [the CFAA] because [the airline] has alleged loss aggregating at least $5,000." 318 F. Supp. 2d at 439.

Indeed, courts in this Circuit routinely reject the precise types of arguments that Defendants assert here. *See, e.g.*, *Sw. Airlines Co. v. Roundpipe, LLC*, 375 F. Supp. 3d 687, 706 (N.D. Tex. 2019) ("[T]he court concludes that Southwest's complaint states plausible claims for violations of the CFAA [] because Southwest's complaint contains factual allegations that the defendants accessed Southwest's website without authorization in violation of Southwest's use agreement, thereby causing damage to Southwest."); *Frisco Med. Ctr., L.L.P. v. Bledsoe*, 147 F. Supp. 3d 646, 659 (E.D. Tex. 2015) ("[plaintiff] has established that the [] Defendants violated section 1030(a)(2)(C) of the CFAA by intentionally accessing a protected computer by exceeding their authorization and obtaining information, which caused loss to [plaintiff]"). In fact, one of the cases that *Defendants cite* definitively confirms that a complaint "state[s] sufficient facts to establish the requisite loss amounts for a CFAA claim" even if a plaintiff "fail[s] to pinpoint the exact origins [of] . . . losses that they suffered" as long as "they do allege that they suffered harm from service interruption, investigation, and repair." *Talon Transaction Technologies, Inc. v. StoneEagle Services, Inc.*, 2013 WL 12172926, at *4, 8 (N.D. Tex. Aug. 15, 2013) (cited in Mot. at 8).[1]

---

[1]   The other cases that Defendants cite do not change the analysis. Unlike here, in *Southwest Airlines Co. v. Harris*, 2007 WL 3285616 (N.D. Tex. Nov. 2, 2007), the plaintiff airline had not alleged *any* harm to its computer systems, instead relying exclusively on allegations of

Under the plain terms of the CFAA and this Circuit's well-established caselaw, American's allegations are more than sufficient to assert a cognizable loss under the CFAA, and Defendants' contentions to the contrary are based on nothing more than a willful misreading of the Complaint.

### III.   American's Claim Under the Texas Harmful Access by Computer Act Is Also Well-Supported.

Defendants' attempt to escape liability under the THACA fares no better.  Again, Defendants assert that American "fail[s] to plead cognizable damages."  Mot. at 2, 8.  Again, Defendants are incorrect.  In addition to the specific evidence of harms cited above, Compl. ¶¶ 173, 175, American also specifically alleges that it "has been harmed by [Defendants'] conduct in at least the following ways: (a) costs associated with American's response to [D]efendants' unlawful access and collection of data; and (b) diminution in value of its product as a result of consumer confusion," *id.* ¶ 181.

These are precisely the types of harms that the THACA was designed to protect against. *See Farechase*, 318 F. Supp. 2d at 443 (denying motion to dismiss THACA claim where plaintiff "has alleged injury to its computer system as a result of [defendant's] access"); *Roundpipe*, 375 F. Supp. 3d at 706 ("Southwest's complaint states plausible claims for [a] violation[] of . . . THACA because Southwest's complaint contains factual allegations that the defendants accessed Southwest's website without authorization in violation of Southwest's use agreement, thereby

---

"misleading statements" and allegedly "wrongful[] purchases" by the airline's customers, *id.* at *4—not injuries caused by the breaches of the computer system.  *Insurance Safety Consultants LLC v. Nugent*, 2017 WL 735460 (N.D. Tex. Feb. 24, 2017) is also distinguishable, because it involved a dispute between two individuals over the defendant's continuing access to the computer systems of their former joint business, and the plaintiff alleged only that he had paid "significant amounts of money to computer experts to examine [plaintiff's] computers to discover the extent of Defendant['s] unauthorized access" by his former partner, *id.* at *8—not the kind of concrete and systematic harms that American has pled of "increase[d] burdens and costs to run and maintain" its computer systems created by Defendants' recurring and massive intrusion into American's systems, Compl. ¶ 173.

causing damage to Southwest."). Again, in *Talon Transaction Techs.*, 2013 WL 12172926—a case cited by Defendants (Mot. at 8)—the court held that "Plaintiffs adequately state[d] a claim for relief under THACA" by alleging that they had "suffered competitive losses due to Defendants' acquisition of information and subsequent use" and the "allegations also suggest damage to the actual data integrity within the database." *Id.* at *3. American's allegations are impossible to distinguish.

If anything, Defendants' THACA arguments fare worse than their CFAA arguments because THACA "merely requires that the [defendant's] access be without effective consent; it does not require injury." *Farechase*, 318 F. Supp. 2d at 443. And here, that is precisely what American alleges: that "Defendants knowingly accessed American's servers without American's effective consent." Compl. ¶ 180; *see, e.g.*, *Farechase*, 318 F. Supp. 2d at 443 (rejecting defendant's argument that the THACA "requires the alleged injury involve 'some kind of impairment to the integrity or availability of [the airline's] data, program, system or information'" and concluding that the airline had stated a THACA claim based on its allegation that defendant "has knowingly accessed [the airline's] computer system without effective consent, and continues to do so" (citation omitted)); *see also DHI Grp., Inc. v. Kent*, 2017 WL 4837730, at *9 (S.D. Tex. Oct. 26, 2017) (cited in Mot. at 5) (holding, without any requirement of a showing of injury, that "[plaintiff's] allegations of a knowing violation of the terms and conditions of the website are sufficient to state a claim under . . . the THACA").

In sum, Defendants' THACA arguments are without merit and should be denied.

## IV.   American Appropriately States a Claim for Trespass.

Defendants' primary argument in favor of dismissing American's claim for trespass rests entirely on the faulty premise that Texas state trespass claims do not apply to "intangible property." But contrary to Defendants' hyperbolic rhetoric, courts in this District *have* allowed the very type

of trespass claim alleged here.  *See, e.g.*, *Farechase*, 318 F. Supp. 2d at 442 (refusing to dismiss a claim for trespass based on defendant's unauthorized use of airline's website and finding that plaintiff had "alleged enough to state a claim").  The only cases that Defendants cite to the contrary are non-binding cases from the Southern and Western Districts of Texas, which incorrectly concluded that Texas courts have not expanded trespass claims to intangible property.  Mot. at 5 (citing *DHI Grp.*, 2017 WL 8794877, at *5; *In re Simons Broad., LP*, 2013 WL 9542015, at *18 (W.D. Tex. Nov. 19, 2013)).  Because this case is pending in the Northern District of Texas, however, American has stated a viable claim.  *See H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs., LLC*, 2009 WL 1766095, at *4 (N.D. Tex. June 23, 2009) ("authority from other district courts is not binding on this court"); *see also, e.g.*, *Althouse v. Cockrell*, 2002 WL 32372815, at *6 n.9 (N.D. Tex. Sept. 12, 2002) ("[a] case out of the Southern District of Texas is not binding on this Court").

Defendants' remaining arguments—like those discussed above—are contradicted by the well-pled allegations of harm in the Complaint.  Again, Defendants argue that the claim should be dismissed because American supposedly "ha[s] not been deprived of their intangible property."  Mot. at 2.  But the Complaint *does* contain such an allegation.  Indeed, the Complaint specifically states, *inter alia*, that "Defendants have used AA.com without permission to enrich their businesses or to profit from the public at large, depriving American of its own resources" and that Defendants' conduct "did and will harm AA.com and American's business."  Compl. ¶¶ 122–23.  Furthermore, this Court has made clear that where the plaintiff "is only seeking an injunction pursuant to its claim," it "need not plead actual damage or deprivation of the use of the property."  *Farechase*, 318 F. Supp. 2d at 442.  The Complaint makes plain that American is seeking injunctive relief on this claim, Compl. ¶¶ 124–25, and thus it need not plead damage or deprivation

of the use of property.   American has therefore stated a claim for trespass, and Defendants'

contentions to the contrary are unavailing.

## PRAYER FOR RELIEF

Therefore, American respectfully requests the Court enter an order denying Defendants'

Motion to Dismiss American's Complaint pursuant to Rule 12(b)(6).  American further prays that

all other relief be awarded to which American is justly entitled at law or in equity.

Dated: April 22, 2022

Respectfully submitted,

/s/ Lars L. Berg
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
J. Austin Franklin
austin.franklin@kellyhart.com
State Bar No. 24057853
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

Howard S. Hogan
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 887-3640
(*pro hac vice*)

**ATTORNEYS FOR PLAINTIFFS
AMERICAN AIRLINES, INC. AND
AADVANTAGE LOYALTY IP LTD.**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on this 22nd day

of April, 2022, upon all counsel of record via the Court's ECF system.

/s/ Lars L. Berg
Lars L. Berg