UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMERICAN AIRLINES, INC. AND
AADVANTAGE LOYALTY IP LTD.,

   Plaintiffs,

v.                                 No. 4:22-cv-0044-P

RED VENTURES LLC AND THE POINTS
GUYS LLC,

   Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court are two motions: a Motion to Dismiss for Lack of Personal Jurisdiction and a Motion to Dismiss for Improper Venue, or alternatively, to Transfer Venue ("Motions"). ECF No. 16. The former was filed by Defendant Red Ventures, LLC ("RV") and the latter was jointly filed by RV and The Points Guy, LLC ("TPG") (together, "Defendants"). Having considered Defendants' Motions and briefs, responsive briefs filed by American Airlines, Inc. and AAdvantage Loyalty IP Ltd. (together, "American"), and applicable law, the Court denies both Motions.

## BACKGROUND

American alleges that Defendants misappropriated data from its servers and integrated that data into an app without its permission. The pending Motions concern the Court's jurisdiction over RV for these claims and whether this District is the proper venue to hear this case.

American claims Defendants initially approached it in 2021 to suggest a collaborative relationship between the parties. In this proposed partnership, American would share customer data from its AAdvantage member loyalty program that Defendants would then utilize in The Points Guy App ("TPG App"). The TPG App was designed to help users maximize benefits of various rewards programs, such as American's AAdvantage program.

The proposed collaboration, however, never reached consummation. After discussions between the Parties, American declined to proceed with the partnership, citing concerns with the TPG App's data security measures. American alleges that Defendants nevertheless launched the TPG App in the fall of 2021, and incorporated American's AAdvantage data and intellectual property. American argues that this data was housed on servers located in Fort Worth, Texas.

## ANALYSIS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

The Court first analyzes the Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction. In this Motion, RV seeks to be dismissed from this case by arguing it is not subject to personal jurisdiction. As shown below, the Court concludes that RV is not subject to general personal jurisdiction in Texas, but that RV is subject to specific personal jurisdiction in this case.

1. American does not argue that RV is subject to general personal jurisdiction in Texas.

The Court "may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

Here, RV argues that it cannot be "fairly regarded as at home" in Texas and that it does not have "continuous and systematic" contacts with the state. ECF No. 17 at 5–6. RV claims it is a "North Carolina limited liability company with its principal place of business in Fort Mill, South Carolina" and that it "has no members or managers in Texas." *Id*.

American is silent in response to RV's argument that it is not subject to general personal jurisdiction in Texas. *See* ECF No. 23 at 9–17. The uncontroverted arguments thus indicate that the Court lacks general personal jurisdiction over RV.

2. <u>RV is subject to specific personal jurisdiction in this case.</u>

The Court next analyzes whether RV is subject to specific personal jurisdiction.[1] Exercising personal jurisdiction over a nonresident defendant is constitutionally permissible if he "purposefully availed himself of the benefits and protections" of a state by establishing "minimum contacts" with the state. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999) (quoting *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir.1986)). The nonresident defendant must be able to "reasonably anticipate being haled into court in the forum state" and the exercise of jurisdiction must not offend "traditional notions of fair play and substantial justice." *Id.* (cleaned up) (quoting same).

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that personal jurisdiction exists. *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982). A plaintiff "need not, however, establish personal jurisdiction by a preponderance of the evidence; *prima facie* evidence of personal jurisdiction is sufficient." *Id.* "Conflicts between the affidavits submitted on the question of personal jurisdiction are thus resolved in favor of the plaintiff." *Id.* (citation omitted).

Here, RV claims to be a "stranger to conduct alleged in this case"; thus, this Court lacks personal jurisdiction. ECF No. 17 at 7. Specifically, RV asserts that it "was not involved in developing, designing, implementing, or otherwise working on any aspect of the TPG App." *Id.*; ECF No. 18 ¶ 6. RV's rests its argument on an attempt to attenuate its corporate relationship from TPG, and thereby avoid having TPG's actions attributed to RV. Specifically, RV argues it is not the "parent company of TPG" and is instead under a "separate ownership chain than TPG." ECF No. 17 at 7. As a result, RV argues that TPG's contacts with Texas should not be imputed to RV.

American disagrees and contends the Court has personal jurisdiction over RV based on RV's own contacts with Texas. American offers three primary reasons to support this conclusion: (1) RV purposefully directed

---

[1] Defendants do not dispute that personal jurisdiction exists with respect to TPG, so the Court analyzes its jurisdiction over RV only.

its activities toward Texas by developing TPG App here and soliciting collaboration with American; (2) the brunt of RV's conduct was felt in Texas; and (3) exercising jurisdiction over RV comports with traditional notions of fair play and substantial justice. The Court focuses on the first and third arguments and concludes the evidence sufficiently shows that the Court has personal jurisdiction over RV.

American argues that since "RV acquired TPG in 2017, the two entities have been inextricably linked." ECF No. 23 at 11. American claims RV was "involved in every step of the outreach to American (in Texas) to seek American's permission to use its intellectual property and data" involved in its claims. *Id.* at 10. RV's involvement started "in February 2021, when Defendants reached out to American to solicit interest in collaborating on the forthcoming TPG App." *Id.* at 11.

In support, American claims that Jack Witty (then-Director for the TPG App team) contacted Heather Samp (a Managing Director of AAdvantage Member Engagement) to solicit American's collaboration on the TPG App. *Id.* at 11–12; ECF No. 24 at 23, 78. Witty, Samp, and their respective teams teleconferenced on February 25, 2021. ECF No. 23 at 11–12. Witty then sent a follow-up email with an attachment labeled "American Airlines x TPG App API Request.pdf" that detailed the nature of the prospective collaboration. *Id.*; ECF No. 24 at 78. This document details how data collected from partners for use in the TPG App "would be primarily stored by *RV:* 'Data is imported from partners using Oath API connections *then stored in RV's databases in Amazon Web Services (AWS).*'" ECF No. 23 at 12 (emphases in original). Thus, American argues that the proposed operation for the TPG App involved data being collected from American's servers in Fort Worth that would then be stored on RV's servers elsewhere.

American also relies on a document sent by Mitchell Stoutin (a senior Director of Engineering at "The Points Guy / Red Ventures") to Eddie Armenta (Product Technical Lead at American) to support its jurisdictional argument. ECF No. 23 at 13; ECF No. 24 at 131–41. Specifically, after the TPG App launched in September 2021 with AAdvantage member integration, Armenta contacted Stoutin to discuss security concerns about the TPG App. *Id.* at 12. American posits that, to

4

"assuage American's concerns regarding the data risks associated with TPG App," Stoutin sent Armenta an updated API App Request tilted "American Airlines x TPG / Red Ventures App Account Linking." *Id.*; ECF No. 24 at 141. The opening line of this document states that "Red Ventures launched the TPG App in the iOS App Store in September 2021." ECF No. 24 at 141. This, American argues, cuts directly against RV's argument that it was not involved in "working on any aspect of the TPG App."

RV's reply does not squarely address American's argument that RV purposefully availed itself by soliciting American's collaboration on the TPG App. Nor does RV meaningfully respond to American's arguments regarding the substance of the API requests sent by Witty and Stoutin to American. RV's reply also fails to counter American's arguments that exercising jurisdiction over RV would comport with traditional notions of fair play and substantial justice.

The Court concludes American presented *prima facie* evidence that RV purposefully availed itself of the benefits and protections of Texas by establishing minimum contacts that relate to American's claims. *See Wien Air Alaska, Inc.*, 195 F.3d at 211. Specifically, American proffered evidence establishing a *prima facie* case that RV representatives reached out to Texas and solicited American's collaboration on the TPG App. ECF No. 23 at 9–14; *see* ECF No. 24 at 23, 78. The API requests implicate RV's involvement with launching the TPG App in September 2021. *See* ECF No. 24 at 141. These API requests also indicate that the AAdvantage member data at issue would be stored on RV's servers. ECF No. 24 at 141. The Court thus determines that RV had sufficient minimum contacts such that RV could "reasonably anticipate being haled into court in the forum state." *See Wien Air Alaska, Inc.*, 195 F.3d at 211. The Court further agrees with American's unrebutted arguments that exercising jurisdiction over RV would not offend traditional notions of fair play and substantial justice. *See* ECF No. 23 at 15–16. Therefore, the Court finds that American satisfied its burden to establish *prima facie* evidence that personal jurisdiction exists over RV in this case. RV's Motion to Dismiss for Lack of Personal Jurisdiction is accordingly denied.

### B. Motion to Dismiss for Improper Venue

Defendants raise two venue arguments. Defendants first argue that a forum-selection clause in the AAdvantage Use Agreement setting Tarrant County as the designated forum is inapposite in this case; the Court agrees. Defendants then argue that, for this dispute, this Court is an improper venue, thus warranting dismissal; the Court disagrees.

1. <u>The forum-selection clause is inapplicable.</u>

Defendants first argue that a forum-selection clause in the AAdvantage Use Agreement that American cites in its Complaint does not apply in this case. The Court agrees and concludes that this does not provide a basis for venue in this case.

American argues that when users log into AAdvantage, they agree to the AAdvantage Terms and Conditions, which incorporate the Use Agreement and its forum-selection clause. ECF No. 23 at 22. American's forum-selection clause states: "Any lawsuit **brought by you** related to your access to, dealings with, or use of the Site must be brought in the state or federal courts of Tarrant County, Texas." ECF No. 1 ¶ 16 (emphasis added). American contends that the TPG App requests AAdvantage users' login credentials and uses those credentials to log in to AAdvantage on the users' behalf, thereby agreeing to the Use Agreement's forum-selection clause.

The Court concludes that, though the forum-selection clause is ostensibly valid and enforceable, it is ultimately inapplicable in this dispute. By its plain terms, the forum-selection clause applies only to lawsuits *brought by consumers* against American related to their "access to, dealings with, or use of" American's website. *See id.* The forum-selection clause does not, however, dictate where American can or must file its lawsuits. American's argument to the contrary—that it "filed this lawsuit in response to TPG's declaratory judgment suit [that was] improperly brought in Delaware state court"—does not change the plain text of the forum-selection clause. ECF No. 23 at 19; *see also Ogden v. Saunders*, 25 U.S. (12 Wheat.) 213, 332 (1827) (Marshall, C.J. dissenting) ("To say that the intention of the instrument must prevail; that this intention must be collected from its words; that its words are

6

to be understood in that sense in which they are generally used by those for whom the instrument was intended; that its provisions are neither to be restricted into insignificance, nor extended to objects not comprehended in them, nor contemplated by its framers;—is to repeat what has been already said more at large, and is all that can be necessary."). The Court has no ability to determine whether the Delaware state court action was brought in the appropriate venue; the Court analyzes venue only of the case currently before it. Because American (rather than a consumer) brought this lawsuit, the forum-selection clause is inapposite.

2. Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391(b)(2).

The Court next analyzes whether this District is a proper venue for this case under 28 U.S.C. § 1391(b)(2). The Parties frame the relevant conduct giving rise to this dispute different and thus come to different conclusions as to the appropriate venue for this case. Defendants focus on where the TPG App was developed, launched, and operated, which they argue was Austin, Texas. ECF No. 17 at 11–12. American argues, however, that the basis for their suit is not where the TPG App was initially developed, launched, and operated; instead, the crux of this case is where Defendants allegedly accessed and collected AAdvantage member data. ECF No. 23 at 20–21. American asserts that it housed the pertinent AAdvantage member data at issue in this lawsuit on servers located in Fort Worth, Texas. *Id.* at 24–25.

American proffered the Declaration of Scott Chandler (a vice-president for American). ECF No. 24 at 27–28. Chandler states that "[b]ecause of the sensitive nature of this data, American Stores all AAdvantage® member data in secure servers in Fort Worth, Texas, where American is headquartered." *Id.* at 27. Chandler further states that in "2017 American moved the servers that host its customer reservation system to the Oracle Cloud Infrastructure. American AAdvantage® member data was not part of the integration with the Cloud, as it is distinct from the customer-reservation system and carries different security concerns." *Id.* at 28.

7

Chandler's declaration contradicts Defendants' contention that the membership data at issue in this case is housed on Cloud-based servers located outside of Texas. *Compare id.*, *with* ECF No. 17 at 12–15. Defendants point to a recent, public presentation in which an American representative discussed its general migration of data onto Cloud-based servers. *See id.* Online users accessing www.aa.com for certain information are ostensibly redirected to servers located to Phoenix, Arizona or Ashburn, Virginia. *See id.* at 13. Chandler, however, clarifies that the "sales reservation system" information on these out-of-state servers is distinct and separate from the AAdvantage member data, which is housed in Fort Worth, Texas. *Compare id.*, *with* ECF No. 24 at 27–28. Thus, American does not argue that Defendants' description of the flow of traffic from its website is incorrect; it instead argue that this is simply the wrong stream of information.

As courts in the Fifth Circuit have held, "venue is proper based on the location of allegedly misappropriated information." *See, e.g.*, *ECL Grp. LLC v. Mass*, No. 3:17-CV-2399-D, 2018 WL 949235, at *9 (N.D. Tex. Feb. 20, 2018) (Fitzwater, J.) (holding that venue was proper pursuant to § 1391(b)(2) because "the location of the computer servers containing [the plaintiff's] confidential information is sufficient to establish that venue is proper in Texas"). Here, American alleges that Defendants improperly accessed and used AAdvantage member data. American provides sworn declaration testimony that this member data is housed on servers in Fort Worth, Texas. ECF No. 24 at 27–28. The Court thus concludes that venue is proper in this District because a substantial part of the events giving rise to American's claims occurred in this District. *See* 28 U.S.C. § 1391.

### C. Motion to Transfer Venue

Finally, the Court analyzes Defendants' alternative § 1404 request to transfer this case to the Western District of Texas or to the District of Delaware. A party seeking a transfer under § 1404(a) "must show good cause" by "clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022) (cleaned up) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen*

8

*II*")). "When the transferee venue is not clearly more convenient than the venue chosen by the Plaintiff, the Plaintiff's choice should be respected." *Id.* (quoting same). Thus, "the standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *Id.* (citing same at 314–15).

District courts have discretion to "transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). "The first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). After a potential transferee court is established, "courts are required to assess four private interest factors and four public interest factors" pertinent to transfer motions. *See id.* (quoting *Volkswagen II*, 545 F.3d at 315).

Here, American does not dispute this civil action "might have been brought" in the Western District of Texas or the District of Delaware. *See* ECF No. 23 at 21–22. The Court therefore dispenses with the first step of the § 1404 analysis and turns to the private and public interest factors.

1. The private interest factors do not support a transfer.

The Court begins with the private factors. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Def. Distributed*, 30 F.4th at 435 (quoting *Volkswagen II*, 545 F.3d at 315).

*First*, both Parties have potential sources of proof that are in different forums. Defendants argue that TPG's business records relevant to the TPG App are in Austin, Texas. ECF No. 22 at 17. Defendants argue that the location of their documents should weigh more heavily because this case involves allegations of misappropriation.

9

*Id.* (citing *Camatic Proprietary Ltd. v. Irwin Seating Co.*, No. 3:16-CV-0795-M, 2017 WL 2362029, at *3 (N.D. Tex. May 31, 2017) (Lynn, C.J.) ("[T]he bulk of the relevant evidence usually comes from accused [patent] infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (citation omitted)).

American disagrees. It focuses on its allegations that Defendants "misappropriated American's brand, goodwill and proprietary customer dataset." ECF No. 23 at 23. American thus argues that the "relevant information was created and is stored in this district." *Id.*

Defendants have not sustained their burden to show the transfer would provide more convenient access to relevant sources of proof. The Court concludes that this first private factor does not support a transfer.

*Second*, the ability of the parties to compel attendance of unwilling witnesses at trial does not favor transfer. Defendants claim "[m]any relevant witnesses are located in the Western District of Texas[,] . . . including former employees who may have relevant knowledge[.]" ECF No. 17 at 18. But, as American notes, Defendants do not specifically identify any unwilling third-party witness with relevant knowledge. *See* ECF No. 23 at 23. American also argues that since "party witnesses almost invariably attend trial at the behest of their employers, i.e., willingly, '[t]his factor is directed towards unwilling third-party witnesses.'" *Id.* (quoting *Seagen Inc. v. Daiichi Sankyo Co.*, 546 F. Supp. 3d 515, 531 (E.D. Tex. 2021)). American thus asserts that Defendants failed to identify any unwilling witnesses subject to subpoena power in the Western District, but not in this District. The Court agrees with American; this factor does not support transfer.

*Third*, the cost of attendance for willing witnesses does not favor transfer. Defendants parrot their argument from the preceding factor that some unspecified witnesses reside in the Western District. They contend, therefore, that "the cost of attendance for willing witnesses is less in the Western District of Texas than this District." ECF No. 17 at 18. American notes, however, that its willing witnesses are primarily located in this District. ECF No. 23 at 24. Each Party's willing witnesses

10

would ostensibly incur comparable expenses whether they travel from the Northern District to the Western District or vice versa.

It is axiomatic that "[s]hifting expenses from one party to another does not weigh in favor of transferring a case without some evidence that shifting those expenses would serve the interests of justice." *Ternium Int'l U.S.A. Corp. v. Consol. Sys., Inc.*, No. 308-CV-0816-G, 2009 WL 464953, at *4 (N.D. Tex. Feb. 24, 2009) (Fish, J.) (citation omitted). Defendants provide no such evidence. The Court thus concludes that Defendants failed to establish how merely shifting expenses of travel from one side to the other would serve the interests of justice. This factor does not favor transfer.

*Finally*, the Court determines that the Parties did not raise ancillary issues with conducting trial in this District that would significantly weigh on the fourth factor. This factor is neutral.

2. <u>The public interest factors do not support a transfer.</u>

The Court next turns to the public factors. The public interest factors bearing on a §1404 motion to transfer are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Def. Distributed*, 30 F.4th at 435 (quoting *In re Volkswagen*, 545 F.3d at 315).

*First*, the relative congestion of this Court weighed against that of courts in the Western District is neutral. Defendants concede that Courts in the Northern District and the Western District have "comparable court and timing statistics." ECF No. 17 at 18. Defendants only other argument on this factor is that cases reach trial slightly quicker in the Western District than the Northern District. *Compare* ECF No. 18 at 84 (579 days to trial in the Western District), *with* ECF No. 18 at 90 (651 days to trial in the Northern District).[2] Defendants do

---

[2]The Court's internal statistics report shows that from January 1, 2019, to May 20, 2022, the average time from the filing of a complaint to the start of trial in the Fort Worth Division of the Northern District is 525 days. Thus, the Fort Worth Division thus provides a more efficient forum to hear this case than an average court in the Western District of Texas. And as this Court has

11

not substantially move the needle on this factor; the relative congestion of courts in either district does not support transfer.

*Second*, both the Western and Northern Districts have an interest in deciding this case. Defendants argue the relevant conduct alleged by American occurred in the Western District. They argue the TPG App was developed and launched in the Western District and that they continue to operate the TPG App there.

However, American notes that this public interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit." ECF No. 23 at 251; *Def. Distributed*, 2022 WL 984870, at *12. As noted above, the most relevant conduct to American's claims is alleged misappropriation of member data, which is stored on servers in Fort Worth, Texas. Thus, while both the Western District and the Northern District have some local interest in deciding this case, this factor weighs against transfer.

*Finally*, the Parties agree that the third and fourth public interest factors are of no consequence in this case. "Both this District and the Western District of Texas are equally capable of applying both federal, Texas state law, or any other applicable law to the alleged claims in this dispute, and a conflict of laws analysis is not anticipated at this time to be necessary." ECF No. 17 at 19. These factors are thus neutral.

3. <u>Defendants do not adequately argue transfer to Delaware.</u>

The Court quickly disposes of Defendants' alternative argument that this case should be transferred to the District of Delaware. Defendants did not address the above-listed private and public interest factors for this requested transfer. *See* ECF No. 17 at 19. Instead, Defendants

---

repeatedly noted, it is often inappropriate to conflate the Fort Worth Division with other divisions in this District. *See, e.g.*, *Six Flags Ent. Corp. v. Travelers Cas. & Sur. Co. of Am.*, No. 4:21-CV-00670-P, 2021 WL 2064903, at *2 (N.D. Tex. May 21, 2021) (Pittman, J.) ("[T]he Dallas and Fort Worth Divisions are vastly different. Fort Worth and Dallas are two vastly different cities and judicial divisions with different judges, juries, cultures, and histories.")

merely state that both American and TPG are incorporated in Delaware and "there is pending litigation regarding the same transaction between these parties in Delaware state court." *Id.* Because they failed to adequately argue the relevant factors for transfer under § 1404, the Court concludes that Defendants failed to carry their burden to have this case transferred to the District of Delaware.

### ORDER

The Court therefore **DENIES** Red Venture's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and **DENIES** Defendants' Rule 12 (b)(3) Motion to Dismiss or Transfer. All other relief requested in these Motions is **DENIED**.

**SO ORDERED** on this **20th day** of **May, 2022.**

*/s/ Mark T. Pittman*
Mark T. Pittman
UNITED STATES DISTRICT JUDGE