UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**AMERICAN AIRLINES, INC. AND**
**AADVANTAGE LOYALTY IP LTD.,**

   Plaintiffs,

v.                                                              No. 4:22-cv-0044-P

**RED VENTURES LLC AND THE POINTS**
**GUYS, LLC,**

   Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court is a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Motion") filed by Defendants Red Ventures, LLC and The Points Guy, LLC (together, "Defendants"). ECF No. 19. Defendants seek to dismiss four claims brought by American Airlines, Inc. and AAdvantage Loyalty IP Ltd. (together, "American"). Having considered the Motion, arguments of counsel, and applicable law, the Court grants in part and denies in part the Motion.

## BACKGROUND

American alleges that Defendants misappropriated data from its servers and integrated that data into Defendants' app without permission. American claims Defendants initially approached it to suggest a collaborative relationship between the parties. In this proposed partnership, American would share customer data from its AAdvantage member loyalty program, and Defendants would then utilize that data in The Points Guy App ("TPG App"). The TPG App was designed to help users maximize benefits of various rewards programs, such as American's AAdvantage program.

The proposed collaboration, however, never materialized. After discussions between the Parties, American declined to proceed with the partnership, citing concerns with the TPG App's data security measures. American alleges that Defendants nevertheless incorporated

American's AAdvantage data and intellectual property into the TPG App, which was launched in the fall of 2021.

## LEGAL STANDARD

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## ANALYSIS

### A. Unfair Competition by Misappropriation (Count III)

Defendants argue that federal copyright law preempts American's claim for unfair competition by misappropriation and that this claim should therefore be dismissed. American responds that its unfair competition claim—a Texas common law claim—has "nothing to do with copyright." After reviewing the arguments and applicable law, the Court agrees with Defendants and concludes that American's unfair competition by misappropriation claim is preempted.

1. Preemption under the Copyright Act

"Section 301 of the Copyright Act preempts state law claims that fall within the general scope of federal copyright law." *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 655 (5th Cir. 2017) (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 785–89 (5th Cir. 1999)).[1] Courts in the Fifth Circuit use a two-part test to determine whether a state law claim is preempted by the Copyright Act. Courts first examine the state claim "to determine whether it falls 'within the subject matter of copyright' as defined by 17 U.S.C. § 102." *Dig. Drilling Data Sys., 0L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 378 (5th Cir. 2020) (quoting *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 594 (5th Cir. 2015)). If so, courts then consider the state cause of action "to determine if it protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright, as defined in 17 U.S.C. § 106." *Id.* (quoting same). This requires courts to evaluate the equivalency of the protected rights by applying the "extra element" test: Preemption does not occur if the state law claim requires "one or more qualitatively different elements." *Id.* at 378 (quoting *Alcatel USA, Inc.*, 166 F.3d at 787).

2. American's proprietary data falls within the scope of copyright.

Here, the first prong of the preemption test—whether the claim falls "within the subject matter of copyright"—requires more analysis than the second.[2] Defendants argue the first prong is satisfied because American's unfair competition claim alleges that Defendants copied American's "proprietary information" from American's website. Defendants thus contend that the purported uses of "proprietary

---

[1]Section 301 of the Copyright Act provides:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

[2]The Fifth Circuit did not address the interaction between § 301(a) and § 102 until 2015; before then, "only two of [the Fifth Circuit's] cases discuss the subject matter of copyright at any length." *Spear Mktg., Inc.*, 791 F.3d at 595.

3

information" and "proprietary data" both fall within the general "subject matter" of copyright law.

American responds that its claim is based on Defendants' wrongful access of its servers and "systems that American has put in place to manage [its] customer relationships." ECF No. 22 at 7. American thus argues that the gravamen of this claim is that Defendants and the TPG App "misappropriate[d] access to [American's] systems to usurp American's relationships with its customers and the opportunity to continue to service those customers directly." *Id.* American writes off Defendants' argument on the misappropriation of "proprietary information" as a mere "straw man" without addressing the substance of the argument. *Id.* In attempting to distinguish Defendants' authority on this point, American offers only one sentence stating that the allegedly misappropriated information in this case is different than in the case cited by Defendants. *See id.* ("American has not alleged a misappropriation of 'manuals' or other 'billing information' that could be considered an 'original work[] of authorship fixed in a[] tangible medium of expression.'" (quoting *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 773–74 (5th Cir. 2017))). American is correct in stating that the content at issue here differs from that involved in the *Motion Med. Techs., L.L.C.* case. However, American's terse response fails to adequately explain why this proprietary information falls outside the subject matter of copyright; thus, American fails to answer the pertinent question of this analysis. According to American, the "only copyright at issue" in this case is the alleged infringement of American's Flight Symbol found at Count IX.

The Court agrees with Defendants: American construes this element too narrowly. American focuses too much on the unfair competition aspect of its claim without fully appreciating the underlying tort of misappropriation. The preemption test does not hinge on whether a claim centers on an actual copyright; rather, the preemption test depends on whether the *substance* of that claim falls within the subject matter of the Copyright Act. *See Digital Drilling*, 965 F.3d at 378. Thus, this element requires the Court to determine what intellectual property American is seeking to protect from alleged misappropriation. Here,

4

American's misappropriation claim alleges that Defendants accessed and copied "proprietary data" from its "proprietary website." Defendants allegedly used American's proprietary information to create an unauthorized repository of customer data and offered similar services to American's customers. ECF No. 1 ¶¶ 116–18. Because this claim turns on the alleged theft of "proprietary data," it is preempted if that data falls within the subject matter of federal copyright law.

The Court holds that the proprietary data at issue in this claim falls "'within the subject matter of copyright' as defined by 17 U.S.C. § 102." *See Alcatel,* 166 F.3d at 789 (holding that plaintiff's claim of unfair competition by misappropriation was preempted by the Copyright Act when plaintiff alleged defendant stole its software, used it to make microprocessors, and distributed the microprocessors in competition with plaintiff); *see also M–I LLC v. Stelly*, 733 F. Supp. 2d 759, 784–85 (S.D. Tex. 2010) (holding that plaintiff's unfair competition by misappropriation claim that alleging defendant used, without permission, plaintiff's tool design drawings to make a competing a product was preempted). The platform and systems that American built are analogous to software, which constitutes a tangible medium protected by the Copyright Act.[3] As that tangible medium falls within the subject matter (that is, the scope) of copyright, so does the proprietary information contained within it. *Spear Mktg., Inc.,* 791 F.3d at 597. Thus, the first element of the preemption test is satisfied.

3. American's claim for unfair competition by misappropriation protects rights equivalent to those protected by copyright law.

Turning to the second prong, the Court considers whether the state claim protects the same or "equivalent" rights as those under copyright law. *Dig. Drilling Data Sys.*, 965 F.3d at 377. The Fifth Circuit has at least thrice held that "Texas's unfair-competition-by-misappropriation tort does not afford protection qualitatively different from federal copyright law." *Motion Med. Tech., L.L.C.*, 875 F.3d at 775 (holding that copyright law preempted a Texas unfair-competition-by-

---

[3]The Complaint claims: "AA.com is a proprietary website consisting of a privately owned computer system, with supporting servers, databases, routers, networks, bandwidth, computer capacity, firewalls, and other equipment." ECF No. 1 ¶ 26.

5

misappropriation claim); *Ultraflo*, 845 F.3d at 657–59 (same); *Alcatel*, 166 F.3d at 787–89 (same).[4] American does not dispute this point in its Response. Therefore, the second prong of analysis is satisfied here. *Id.*

   4. <u>The unfair competition by misappropriation claim is preempted.</u>

Because both elements of the two-part test are satisfied, the Court concludes that American's state law claim from unfair competition by misappropriation is preempted by the Copyright Act. *See Dig. Drilling Data Sys., Inc.*, 965 F.3d at 377; *see also Spear Mktg., Inc.*, 791 F.3d at 594. The Motion is granted on this point; American's claim for unfair completion by misappropriation claim is thus dismissed with prejudice.

**B. Trespass to Intangible Property (Count IV)**

Defendants next claim that American's claim for trespass to intangible property should be dismissed because Texas state trespass claims do not apply to "intangible property." ECF No. 19 at 2. Trespass to property is an "unlawful injury to, or interference with, possession of the property with or without the exercise of physical force." *In re Simons Broad., LP*, No. CIV. W-11-CA-0172, 2013 WL 9542015, at *18 (W.D. Tex. Nov. 19, 2013) (citing *Russell v. Am. Compl. ¶ Real Estate Corp.,* 89 S.W.3d 204, 210 (Tex. App.—Corpus Christi 2002, no pet.)). "Liability does not attach, unless the wrongful detention is accompanied by actual damage to the property or deprives the owner of its use for a substantial period of time." *Zapata v. Ford Motor Credit Co.,* 615 S.W.2d 198, 201 (Tex. 1981).

Defendants cite *In re Simons Broadcasting, LP*, where the court dismissed the plaintiff's claims for trespass to chattels for downloading and accessing the plaintiff's client information. No. W-11-CA-172, 2013 WL 9542015, at *18 (W.D. Tex. Nov. 19, 2013). There, the court stated it was "not aware of any Texas court expanding trespass to personalty claims to trade secrets or other intangible property, and declines to do so today." Similarly, the court in *DHI Group, Inc. v. Kent* acknowledged that "Texas law has not recognized claims for trespass to chattels

---

[4]Misappropriation of trade secrets, by contrast, would not be preempted because such a claim requires wrongful conduct beyond "mere reproduction." *Motion Med. Tech., L.L.C.*, 875 F.3d at 775 (quoting *GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 488 (5th Cir. 2016)).

6

concerning intangible property." No. CV H-16-1670, 2017 WL 8794877, at *5 (S.D. Tex. Apr. 21, 2017), *report and recommendation adopted*, 2017 WL 4837730 (S.D. Tex. Oct. 26, 2017). The Court finds these cases persuasive.

American cites *Sw. Airlines Co. v. Farechase, Inc.* to support the contention that its trespass claim should not be dismissed. 318 F. Supp. 2d 435, 442 (N.D. Tex. 2004) (Sanders, S.J.). Though the 18-year-old *Farechase* case is factually analogous to the present case in many respects (and this Court has great personal regard for the legal acumen of the legendary Judge Barefoot Sanders), the Court ultimately concludes that the case is not dispositive here. The jurisprudential understanding of claims for trespass to digital, intangible property appears to have developed since the *Farechase* decision. More recent cases acknowledge that intangible property is not contemplated by Texas common law trespass claims. *See, e.g.*, *In re Simons Broad., LP*, 2013 WL 9542015, at *18; *see also DHI Grp., Inc.* 2017 WL 8794877, at *5. Tellingly, the *Farechase* opinion did not contain any discussion on the intangible nature of the property at issue there. *See Farechase,* 318 F. Supp. 2d at 442. Further, American notably failed to cite *any* Texas state court cases recognizing a state law claim for trespass to intangible property, despite a direct challenge to this theory posed in the Motion. *See* ECF No. 22 at 12–14.

Accordingly, the Court grants Defendants' motion on this point and dismisses American's trespass claim (Count IV).

### C. Computer Fraud and Abuse Act (Count X)

Defendants next move to dismiss American's Computer Fraud and Abuse Act claim ("CFAA") by arguing that American failed to plead a cognizable injury under the CFAA. The CFAA prohibits acts of computer trespass by unauthorized users and creates a civil remedy for "[a]ny person who suffers damage or loss by reason of violation of this section." 18 U.S.C. § 1030(g). Defendants contend American merely alleged that they *accessed* American's data, which they argues is insufficient to create a cognizable claim for damages under the CFAA. ECF No. 19 at 6. Specifically, they argue American failed to plead that any data was "impaired, that its integrity was compromised, or that any data was

7

rendered unavailable from [American's] computers." *Id.* Defendants argue in the alternative that American's claim should be dismissed because American failed to plead it suffered a "loss" as contemplated in the Act. Specifically, Defendants claim American failed "to allege that the cost of investigation was related to a damaged computer or that any service provided by their computers was interrupted." ECF No. 19 at 7.

American responds that Defendants cherry-picked its allegations and that its Complaint adequately states a CFAA violation injury. American claims that Defendants ignore its allegations that Defendants' access "increases the burdens and costs to run and maintain such systems," and causes "harm to its content and programs, and expenses from being forced to investigate the unauthorized access and abuse of its computers and servers," ECF No. 1 ¶ 173, 175. American further contends these are "precisely the sorts of harms that the CFAA was designed to prevent." ECF No. 22 at 9. The CFAA "provides for a civil action by anyone who has suffered 'damage or loss by reason of a violation'" of the statute. *Farechase, Inc.*, 318 F. Supp. 2d at 438 (quoting 18 U.S.C. § 1030(g)).[5]

The Court agrees with American. Specifically, the Court concludes that the Complaint states a plausible CFAA violation claim because it contains factual allegations that the Defendants accessed American's proprietary information without authorization, thereby causing damage and loss to American, as contemplated by the CFAA. *See, e.g.*, *Sw. Airlines Co. v. Roundpipe, LLC*, 375 F. Supp. 3d 687, 706 (N.D. Tex. 2019) (citation omitted) (Fish, S.J.). The Motion is therefore denied on this point.

**D. The Texas Harmful Access by Computer Act (XI)**

Finally, Defendants move to dismiss American's claim for an alleged violation of the Texas Harmful Access by Computer Act ("THACA"). The THACA provides that a "person commits an offense if the person knowingly accesses a computer, computer network, or computer system

---

[5] Loss is defined in the statute as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

8

without the effective consent of the owner." TEX. PENAL CODE ANN. § 33.02(a). Once a § 33.02 violation is established, a civil cause of action can be maintained by a "person who is injured or whose property has been injured as a result of a violation under Chapter 33." TEX. CIV. PRAC. & REM. CODE ANN. § 143.001(a).

Defendants acknowledge that American alleged it was "harmed by . . . costs associated with [its] response to [D]efendants' unlawful access and collection of data; and [] diminution in value of its product as a result of consumer confusion." ECF No. 19 at 8 (quoting ECF No. 1 ¶181). But Defendants argue that American has "not alleged any such confusion actually exists." *Id.*

American responds that it specifically alleged it "has been harmed by [Defendants'] conduct in at least the following ways: (a) costs associated with American's response to [D]efendants' unlawful access and collection of data; and (b) diminution in value of its product as a result of consumer confusion." *Id.* at 11 (quoting ECF No. 1 ¶ 181). American argues these are "precisely the types of harms that the THACA was designed to protect against." *Id.* (citing *Roundpipe*, 375 F. Supp. 3d at 706 ("Southwest's complaint states plausible claims for [a] violation[] of . . . THACA because Southwest's complaint contains factual allegations that the defendants accessed Southwest's website without authorization in violation of Southwest's use agreement, thereby causing damage to Southwest.")).

At this very early stage in the proceedings, the Court concludes the Complaint states a plausible claim for a THACA violation and the associated damages. Specifically, American alleged that it "suffered competitive losses due to Defendants' acquisition of information and subsequent use" and the "allegations also suggest damage to the actual data integrity within the database." *Talon Transaction Tech., Inc. v. StoneEagle Servs., Inc.*, No. 2013 WL 12172926, at *3 (N.D. Tex. Aug. 15, 2013) (Solis, J.). The Motion is accordingly denied on this point.

9

## ORDER

As detailed above, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss (ECF No. 19). Counts III and IV of the Complaint are accordingly **DISMISSED with prejudice**.

**SO ORDERED** on this **15th day** of **July, 2022.**

*[signature: Mark T. Pittman]*

Mark T. Pittman
UNITED STATES DISTRICT JUDGE