IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., and<br>AADVANTAGE LOYALTY IP LTD.,<br><br>    Plaintiffs,<br>v.<br><br>RED VENTURES, LLC, and<br>THE POINTS GUY, LLC,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:22-cv-00044-P |

# PLAINTIFFS' OPPOSED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND BRIEF IN SUPPORT

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

Howard S. Hogan (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 887-3640

Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
J. Austin Franklin
austin.franklin@kellyhart.com
State Bar No. 24057853
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

*ATTORNEYS FOR PLAINTIFFS*
*AMERICAN AIRLINES, INC. AND*
*AADVANTAGE LOYALTY IP LTD*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND FACTUAL BACKGROUND ........................................................ 1

II. ARGUMENTS AND AUTHORITIES ................................................................................ 2

    A. Granting leave to amend a complaint is given freely when justice requires, and the standard should be applied liberally.   2

    B. This Court should grant leave for American to amend its complaint to allege its new unfair competition claim based on Defendants' unauthorized access and misuse of American's noncopyrightable AAdvantage® data.   3

III. CONCLUSION .................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                                  Page(s)

*Alcatel USA, Inc. v. DGI Techs., Inc.*
  166 F.3d 772 (5th Cir. 1999) ....................................................................................... 5, 8, 11

*Davis v. United States*,
  961 F.2d 53 (5th Cir. 1992) .................................................................................................. 3

*Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
  965 F.3d 365 (5th Cir. 2020) ................................................................................................ 8

*Dussouy v. Gulf Coast Inv. Corp.*,
  660 F.2d 594 (5th Cir. 1981) ............................................................................................ 2, 3

*Engenium Sols., Inc. v. Symphonic Techs., Inc.*,
  924 F. Supp. 2d 757 (S.D. Tex. 2013) ............................................................................. 5, 7

*Feist Publ'ns Inc. v. Rural Tele. Servs. Co.*,
  499 U.S. 340 (1991) .................................................................................................. 2, 4, 5, 6

*Foman v. Davis*,
  371 U.S. 178 (1962) ........................................................................................................ 2, 3

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) ................................................................................................ 2

*Griggs v. Hinds Junior Coll.*,
  563 F.2d 179 (5th Cir. 1977) ................................................................................................ 2

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
  997 F. Supp. 2d 526 (N.D. Tex. 2014) ................................................................................ 2

*M-I LLC v. Stelly*,
  733 F. Supp. 2d 759 (S.D. Tex. 2010) ................................................................................. 7

*Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. of Am. Co.*,
  195 F.3d 765 (5th Cir. 1999) ................................................................................................ 2

*Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*,
  751 F.3d 368 (5th Cir. 2014) ................................................................................................ 3

*Motion Med. Techs., LLC v. Thermotek Inc.*,
  875 F.3d 765 (5th Cir. 2017) ....................................................................................... 1, 7, 8

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ................................................................................................ 2

*Sefton v. Jew*,
   201 F. Supp. 2d 730 (W.D. Tex. 2001)......................................................................................6

*Southwest Airlines Co. v. Farechase, Inc.*,
   318 F. Supp. 2d 435 (N.D. Tex. 2004) ..................................................................................6, 7

*Suncoast Post-Tension, Ltd. v. Scoppa*,
   2014 WL 12596471 (S.D. Tex. May 13, 2014) .........................................................................7

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*,
   845 F.3d 653 (5th Cir. 2017) .................................................................................................7, 8

*Unicorn Global, Inc. v. GoLabs, Inc.*,
   447 F. Supp. 3d 535 (N.D. Tex. 2020) ....................................................................................10

*Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*,
   2021 WL 2651087 (N.D. Tex. June 28, 2021) ...................................................................3, 10

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
   401 U.S 321 (1971).....................................................................................................................3

**State Cases**

*BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*,
   448 S.W.3d 562 (Tex. App.—Houston [1st Dist.] 2014, no pet.) .............................................9

**Federal Statutes**

17 U.S.C. § 102................................................................................................................5, 6, 8

**Federal Rules**

Fed. R. Civ. P. 12...........................................................................................................1, 2, 3

Fed. R. Civ. P. 15................................................................................................................1, 2

Pursuant to Federal Rule of Civil Procedure 15, Plaintiffs American Airlines, Inc. and AAdvantage Loyalty IP Ltd. (together, "American") seek leave to amend their complaint against Defendants and respectfully would show the Court as follows:

## I.
## INTRODUCTION AND FACTUAL BACKGROUND

On July 15, 2022, this Court issued its Memorandum Opinion & Order ("Opinion"), ECF 31, granting in part and denying in part Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) ("Motion"). The Court granted the motion by dismissing American's Counts III (Unfair Competition by Misappropriation) and IV (Trespass to Intangible Property) with prejudice.

In explaining its ruling as to Count III, the Court wrote that American's Original Complaint alleges that Defendants unfairly misappropriated "proprietary data," and the claim was preempted because it fell within the "general 'subject matter' of copyright law." Opinion at 4. The Court went on to say, "American fails to answer the pertinent question of this analysis," which is why this information falls outside the subject matter of copyright. Opinion at 4. American regrets that its Original Complaint and briefing failed to answer the Court's question and seeks to do so through its proposed Amended Complaint in Count XIII (Unfair Competition by AAdvantage® Data Misappropriation). In this new Count, American explains why its new claim does not fall within the subject matter of copyright.

American therefore seeks leave to amend its complaint to allege a new Count based *not* on misappropriation of copyrightable material or of material that "fall[s] within the subject matter … of copyright." *Motion Med. Techs., LLC v. Thermotek Inc.*, 875 F.3d 765, 773 (5th Cir. 2017). Instead, American seeks recovery for Defendants' actions in connection with unauthorized access and misuse of its non-copyrightable—yet highly valuable and confidential—AAdvantage® data. This data is constantly changing, purely unoriginal factual data. If anything, the AAdvantage®

data is the paragon of *raw facts*, what the Supreme Court has held is "not original" and "may not be copyrighted." *Feist Publ'ns Inc. v. Rural Tele. Servs. Co.*, 499 U.S. 340, 350 (1991).

## II.
## ARGUMENTS AND AUTHORITIES

### A. Granting leave to amend a complaint is given freely when justice requires, and the standard should be applied liberally.

Under Rule 15, a party may amend its pleadings with leave, and a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). This is because courts follow the "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Rule 15(a) even "evinces a bias in favor of granting leave to amend." *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999). In fact, the "policy of the federal rules is to permit liberal amendment of pleadings to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

With regard to Rule 12 motions, the Fifth Circuit counsels that cases should be "decided on the merits rather than on the sufficiency of pleadings." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). As a result, district courts often allow at least one opportunity to amend following a Rule 12 dismissal because dismissing with prejudice is "too harsh a sanction." *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 548-49 (N.D. Tex. 2014). "Granting leave to amend is especially appropriate ... when the trial court has dismissed the complaint for failure to state a claim." *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977).

Just last year, a Court in this District granted leave for a party to replead its unfair competition claim that was found to be preempted by the Copyright Act in response to a Rule 12 motion. *See Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, 2021 WL 2651087, at *6 (N.D. Tex. June 28, 2021). Adding to the decision to grant leave was the fact that plaintiff had not yet amended its complaint, and the case was "still in the early stages." *Id*.

Of course, granting leave to amend pleadings is "within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S 321, 330 (1971). "Leave to amend is in no way automatic, but the district court must possess a substantial reason to deny a party's request for leave to amend." *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). In exercising this discretion, a court considers a variety of factors, including undue delay, bad faith, undue prejudice to the opposing party, futility, dilatory motive, and repeated failure to cure deficiencies by prior amendments. *See Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1992); *Foman*, 371 U.S. at 182. Absent a substantial reason to deny leave to amend, the court's discretion is not broad enough to permit denial. *Id.*; *Dussouy*, 660 F.2d at 598.

American seeks leave to amend in good faith and in the interest of justice, so this case may be decided on its merits. Defendants will not be prejudiced by allowance of the proposed amended claim. This Motion is timely filed before the deadline to amend pleadings, and trial is over a year away in September 2023. Moreover, there is ample time left before the close of discovery (seven months), and granting this Motion will require no change to the Scheduling Order.

> **B.     This Court should grant leave for American to amend its complaint to allege its new unfair competition claim based on Defendants' unauthorized access and misuse of American's noncopyrightable AAdvantage® data.**

The Court dismissed American's original unfair competition by misappropriation claim as preempted by the Copyright Act. Specifically, it concluded that the then-pleaded claim seeking

relief for "copy[ing of] American's 'proprietary information'" fell within the "subject matter of copyright" and was preempted. *See* Opinion at 3. As the Court noted, the original Complaint did not adequately define what proprietary data was appropriated. As a result, the Court found the data is potentially copyrightable or, if not, within the subject matter of copyright. "The Court holds that the proprietary data at issue in this claim falls 'within the subject matter of copyright.'" *Id.* at 5.

American's proposed new claim is different, more distinctly pleaded, and legally viable. It is based solely on access to a narrow segment of data that is constantly changing and purely factual. The claim is *not* based on misappropriation of any report, process, website, software, database, or tangible medium that is fixed and frozen in time. Rather, the claim is based solely on Defendants' misuse of confidential and factual AAdvantage® data that American continually updates. This data is AAdvantage® member rewards information, mileage account totals, seating and other flight preferences, flight status, and other factual and non-static information. It is the AAdvantage® data alone, not any tangible medium in which it briefly may be stored, on which American is basing this claim. Since AAdvantage® members update preferences and make new flight choices often, and American upgrades their status and offers new rewards, the data is changing literally 24/7.

Raw, unfixed, and factual AAdvantage® data itself is not copyrightable and falls outside the subject matter of copyright. Unlike American's prior claim based on undefined "proprietary data," there is a long line of cases that have held that an unfair competition claim based upon non-static, unoriginal, and purely factual data is *not* preempted by the Copyright Act. As the Supreme Court and Fifth Circuit have held, not everything that is "fixed in a tangible medium of expression" falls within the subject matter of copyright. In particular, "[f]acts, whether alone or as part of a compilation, are not original and therefore may not be copyrighted." *Feist Publ'ns Inc. v. Rural*

*Tele. Servs. Co.*, 499 U.S. 340, 350 (1991). That is because "the Copyright Act protects expression, not facts." *Alcatel USA, Inc. v. DGI Techs., Inc.* 166 F.3d 772, 786 (5th Cir. 1999).

Even where claims are based on data compilations—some of which are copyrightable, some of which are not—"the copyright is limited to that selection or arrangement [of information] and does not extend to the information contained within it." *Id.* Indeed, merely because a fact may be written in a book or exist in a compilation does not convert a claim about theft or misuse of that fact into a copyright case. *See id.* "Census takers, for example, do not 'create' the population figures that emerge from their efforts; in a sense, they copy these figures from the world around them." *Feist*, 499 U.S. at 347. In short, claims "that fall under the umbrella of unfair competition are not automatically preempted merely because copyrighted material may be at issue in the case." *Engenium Sols., Inc. v. Symphonic Techs., Inc.*, 924 F. Supp. 2d 757, 792 (S.D. Tex. 2013).

This line of cases confirms that the proposed new claim based on non-copyrightable factual data, and not on a written, tangible, or fixed medium of expression for the data, is not preempted. The proposed Amended Complaint disavows seeking "relief" in this claim for misappropriation of copyrightable expression. Am. Compl. ¶ 207. The new claim does *not* seek to hold Defendants liable for stealing software, unique data compilations, or even uncopyrightable generic compilations of data, such as those organized alphabetically. *See, e.g.*, Am. Compl. ¶ 207. Instead, it is predicated only on Defendants' misappropriating factual, ever-changing, and uncopyrightable AAdvantage® data and is therefore not preempted.

The terms of the Copyright Act help illustrate the categories of information that fall outside of copyright preemption. Section 102 sets forth that "original works of authorship fixed in any tangible medium of expression," such as literary works, musical works, and dramatic works, are entitled to copyright protection. 17 U.S.C. § 102(a). It then explains, "In no case does copyright

protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." *Id.* § 102(b).

Based on this language, there is an "impeccable pedigree" for the "universally understood" proposition "that facts are not copyrightable." *Feist*, 499 U.S. at 344-45. "The most fundamental axiom of copyright law is that '[n]o author may copyright his ideas or the facts he narrates.'" *Id.* (cite omitted). On this the Supreme Court is clear: "compilations [that] consist of nothing but raw data—*i.e.*, wholly factual information not accompanied by any original written expression"— cannot qualify for copyright protection. *Id.* at 345. Thus, the unfixed and constantly changing raw AAdvantage® data that are the subject of the proposed new claim are not preempted by copyright as a matter of law.

In line with this reasoning, courts in Texas and around the country have permitted unfair competition claims relating to factual data to proceed, allowing the precise kind of claim American seeks to assert here. In *Sefton v. Jew*, 201 F. Supp. 2d 730, 746 (W.D. Tex. 2001), for example, the court held that an unfair competition claim regarding a corporation's alleged publishing of the corporate plaintiff's email name and service marks was not preempted, since such facts "do not fall within the subject matter of the Copyright Act." *Sefton* recognized the Copyright Act preempts claims over both copyrightable and noncopyrightable material only if the material falls within the *subject matter* of copyright. But it also confirmed that raw facts, like an email address or service mark, were *not* preempted because they are beyond the ambit of copyright law altogether.

*Sefton*'s analysis is consistent with other cases in this District and around the country. In *Southwest Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435 (N.D. Tex. 2004), for instance, the Court permitted an unfair competition claim based on misuse of data on Southwest.com. "Fare,

route and scheduling information are all facts and thus not copyrightable." *Id*. at 440. Likewise, in *Engenium*, the court found that copyright was at issue in the complaint (as to software), but the unfair competition claim was not preempted. "A number of the allegations that form the basis of [the] claim have little to do with copyright law." 924 F. Supp. 2d at 792. And in *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 792 (S.D. Tex. 2010), the court held that a misappropriation claim "based on M-I's tool designs" was preempted, but it "survives to the extent M-I alleges that Defendants have engaged in unfair competition by misappropriation of non-copyrightable material." Similarly, in *Suncoast Post-Tension, Ltd. v. Scoppa*, 2014 WL 12596471 (S.D. Tex. May 13, 2014), an unfair competition claim based on misappropriation of copyrighted drawings was preempted, but unfair competition claims based on theft of trade secrets and proprietary information were not.

Each of these cases remains good law and consistent with recent Fifth Circuit case law, none of which stands for the proposition that data-based misappropriation claims are preempted.

In its Opinion, this Court properly focused on several Fifth Circuit cases. In *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 653, 657 (5th Cir. 2017), the court held that the Copyright Act "preempts state protection of works that fall within the subject matter (that is, the scope) of copyright, regardless whether the works are actually afforded protection under the Copyright Act." *Id*. at 657. And in *Motion Medical Techs.*, 875 F.3d at 773 (5th Cir. 2017), the court recognized that the Copyright Act "preempts more than it protects." Flowing from this principle, *Ultraflo* held the Copyright Act preempted a misappropriation claim pertaining to "design drawings" even if the design data itself is not copyrightable. *Id*. at 657. And *Motion Medical*, 875 F.3d at 773-74, held a misappropriation claim as to "manuals, reports, billing information, and other written documents" is preempted even though the "works" are not copyrightable because they are "original works of authorship fixed in a tangible medium of expression." The claims in both cases fell "'within the

subject matter of copyright' as defined by 17 U.S.C. § 102." *Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 378 (5th Cir. 2020) (cite omitted).

Importantly, neither case held that claims (like the proposed new claim here) based *solely* on raw facts falls within the "subject matter of copyright law." *Ultraflo* addressed preemption of an unfair competition claim based on "design drawings," original creative works in a fixed medium of expression that "are undoubtedly within the scope of copyright protection." 845 F.3d at 656. The Court noted that the *drawings* themselves—unlike the constantly changing AAdvantage® data here—"were the basis for the copyright infringement claim Ultraflo took to trial." *Id.*

And in *Motion Medical*, the court similarly held that "original works of authorship fixed in a tangible medium of expression" were within the subject matter of copyright—namely, "manuals, reports, billing information, and other written documents." 875 F.3d at 774. The court noted that the plaintiff "appear[ed] largely to concede" that the basis of its unfair competition fell within the subject matter of copyright: "The company acknowledged in its brief that 'much' of the intellectual property at issue was reduced to a tangible medium.'" *Id.* at 774 n.12.

Similarly, *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 786 (5th Cir. 1999), held only that unfair competition by misappropriation claims based on a defendant's "firmware, operating system software, and [owner's] manuals," were preempted. *Id.* The plaintiff argued that its claim was based on "the use of uncopyrightable information," but the court rejected the contention as inaccurate. *Id*. The *Alcatel* plaintiff "consistently framed its misappropriation count in the context of [the defendant's] use of its firmware, operating system software, and DSP manuals." *Id.* The district court even had instructed "the jury on [the defendant's] use of these *works*, and not specific pieces of information contained within them." *Id.* (court's emphasis).

The same is not true with respect to the constantly changing, unoriginal, and purely factual AAdvantage® data at issue here. Nothing in these Fifth Circuit opinions is contrary to, much less overrules, the case law that allows data-based misappropriation claims or that makes clear that mere data is not copyrightable.

If data-only claims were preempted, the impact on data-dependent companies would be significant. The AAdvantage® data at issue here is not copyrightable, but it is important. It gives American a hard-earned competitive advantage, allowing it to learn its AAdvantage® members' preferences and better serve their needs. That is why, of course, Defendants are attempting to commercialize this data. It is information like AAdvantage® mileage numbers, award status, seating preferences, future flights, and flight alerts. Members update this information in real time, it goes stale quickly, and knowing it allows American to provide industry-leading service.

Preempting a claim focused solely on misuse of data—no matter how raw, unfixed, and ever changing—simply because the data is or can be stored at some point in some fixed medium, would leave a gaping hole in protecting the intellectual property of companies like American around the country.

Furthermore, even though this data is not copyrightable, it is protected by state law. Thus, an unfair competition by misappropriation claim requires a plaintiff to plead and prove: "(1) the creation of plaintiff's product … through extensive time, labor, skill, and money; (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff; and (3) commercial damage to the plaintiff." *BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 572 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The law is broad and protects claims that allege "the existence of an independent

tort or other illegal conduct 'which interfered with the plaintiff's ability to conduct its business.'" *Unicorn Global, Inc. v. GoLabs, Inc.*, 447 F. Supp. 3d 535, 545 (N.D. Tex. 2020) (cite omitted).

If federal law preempts protection for theft of non-copyrightable data, American and other data-driven enterprises will lose a critical state law claim that protects investment and innovation in data arising from providing their services.

Here, the proposed data misappropriation claim meets each of these elements. First, American alleges it has amassed a substantial volume of confidential, factual data from and about AAdvantage® members. Am. Compl. ¶ 197. Members' data is a critical part of the AAdvantage® program, as it allows American to better serve them and strengthen their relationship in a fiercely competitive service-based industry. *See id.* ¶ 200. Second, the proposed new claim alleges that Defendants are in direct competition with AAdvantage® and their misuse of AAdvantage® data gives them a free ride to use the data to displace the airline's relationship with its members. *See, e.g.*, *id.* ¶¶ 201–03. And third, the proposed Amended Complaint alleges that the misappropriation causes commercial damage to American by putting the security of AAdvantage® data at risk outside of its control and by misusing the data to enable unwanted marketing to AAdvantage® members—harms that they incorrectly may attribute to American. *Id.* ¶ 204.

In *Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, 2021 WL 2651087 (N.D. Tex. June 28, 2021), the Court held that the Copyright Act preempted an unfair competition claim as pleaded, but it permitted the plaintiff leave to amend the claim. "The factual allegations regarding Defendant's actions refer exclusively to the theft of Plaintiff's 'copyrighted' works; not the theft of facts which are not copyrightable that accompanied the copyrighted works." *Id.* at *3-4. The Court suggested that plaintiff could plead an unfair competition claim so long as

it identified "facts which are not copyrightable." While that plaintiff did not replead its claim, here American seeks leave to plead the kind of specific facts that support a non-preempted claim.

This request for leave is not futile, untimely, or vexatious. Its original claim was unartfully drafted to reference processes, websites, and other mediums which may store, generate, or process AAdvantage® data, creating ambiguity over the focus of the claim. Likewise, the claim was not clear on the precise nature of the data, simply alleging theft of abstract, undefined, and potentially copyrightable "proprietary data" without clarification. American did not correct this imprecision or definitively state that it asserts a claim solely for misappropriation by Defendants of purely factual and raw AAdvantage® data. The proposed claim is for misuse of AAdvantage® data—factual, unfixed, and ever changing—with no reliance on misappropriation of any database, website, process, or other tangible medium.

Because "the Copyright Act "protects expression, not facts," *Alcatel USA,* 166 F.3d at 786, the proposed new misappropriation claim is not preempted.

### III.
### CONCLUSION

WHEREFORE, American respectfully requests that the Court grant American leave to file the proposed First Amended Complaint against Defendants Red Ventures LLC and The Points Guy LLC attached as "Exhibit 1." American further requests that the Court award it any other and further relief to which it may show itself justly entitled at law or in equity.

Dated: August 5, 2022                          Respectfully submitted,

*Lars L. Berg*
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
J. Austin Franklin
austin.franklin@kellyhart.com
State Bar No. 24057853
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

Howard S. Hogan (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 887-3640

***ATTORNEYS FOR PLAINTIFFS AMERICAN AIRLINES, INC. AND AADVANTAGE LOYALTY IP LTD.***

## CERTIFICATE OF CONFERENCE

In accordance with Local Rule 7.1, the undersigned counsel for Plaintiffs hereby certifies that the consent of Defendants Red Ventures LLC and The Points Guy LLC was sought prior to the filing of the instant Motion. Counsel for Defendants confirmed that Defendants are opposed to the filing and granting of this Motion for Leave.

*Lars L. Berg*
Lars L. Berg

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2022, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*Lars L. Berg*
Lars L. Berg